*In re* EAVES, U. S. Com'r.

*(Circuit Court, W. D. North Carolina.* January Term, 1887.)

1. COURTS—UNITED STATES COMMISSIONER—REMOVAL.
   A United States commissioner may be removed by the circuit court which appointed him, although he is not strictly an officer of that court, but exercises independent judicial functions, which are conferred upon him by law.
2. SAME—PROCEDURE—RULE TO SHOW CAUSE.
   No special mode of procedure having been prescribed by statute, an application to have a commissioner removed may be heard upon a rule to show cause, founded upon affidavits of citizens making charges of misconduct, and granted upon the motion of the United States district attorney, giving the commissioner notice, and an opportunity to present affidavits and other documentary evidence.
3. SAME—EXERCISE OF POWER OF REMOVAL—PRESUMPTION OF INNOCENCE.
   The power of removal should not be exercised capriciously or arbitrarily, but the court should proceed with great caution, and every presumption of innocence allowed in a criminal case should be indulged in favor of the commissioner.
4. SAME—EVIDENCE—CHARGES NOT SUSTAINED.
   Upon the evidence in the case, *held,* that the charges of drunkenness, violent partisanship, improperly discharging prisoners, unnecessarily extending trials over successive days, and of fraudulently allowing excessive witness fees, were not sustained by the evidence.

Rule to show cause why the respondent shall not be removed from the office of commissioner of the circuit court.

*John Gray Bynum,* for the rule. *A. M. Erwin* and *J. F. Morphew,* for respondent.

DICK, J. This rule was founded upon allegations contained in the affidavits of two respectable citizens of McDowell county, and was granted upon the motion of Hamilton C. Jones, United States district attorney, made at the last regular term of this court held at Asheville. The hearing of the rule was continued in order to give notice to respondent, and to afford opportunity to the parties to file affidavits and documentary evidence. By consent of the district attorney, and the permission of the court, the private citizens desiring to sustain the rule were represented by counsel at the hearing at this adjourned term, in Greensboro.

As the counsel for the prosecution and the defense have aided me by able and elaborate arguments upon the questions of law and fact involved in this controversy, I have given the case careful consideration. This proceeding is in the nature of an information filed by the district attorney, with the approval of the court, at the instance of private citizens, complaining of no special personal grievances, but who think that the public interests, and the due administration of justice, require the respondent to be removed from office, for the reason that he has been guilty of gross personal misconduct and official malfeasance in the community in which he resides.

At common law the court of king's bench exercised a superintendence over all inferior jurisdictions, and was invested with the authority and power to allow a criminal information to be filed at the instance of a private person who had sustained a serious injury, for the purpose of investigating the conduct of such inferior magistrates, and punishing them for corrupt and oppressive official misconduct. The person injured by a criminal act was regarded as the proper person to prosecute the offender by indictment, and the more convenient and expeditious mode of procedure by criminal information could not be instituted without the leave of the court; and, as a general rule, such leave was only granted upon the applicant waiving his civil remedy for the injury sustained. In this country the prosecution of criminal offenses is generally committed to the charge of a public officer, whose oath of office, high professional character, official emoluments, and sense of public obligations, are usually sufficient incentives to prompt to a vigorous and faithful performance of duty. The trial by jury is regarded as a reliable and sufficient security for the rights of the citizen. Criminal informations are not allowed in the prosecution of grave or infamous offenses; but a person accused of crime of a serious nature has a constitutional right to have the charges passed upon by a grand jury, and to be tried by an impartial jury, in open court. One of the affidavits upon which this rule is founded, charges a high crime against the respondent, and, if this rule was a criminal proceeding, it could not be prosecuted, as the respondent would be deprived of his constitutional privilege of trial by jury. This rule is in the nature of a civil proceeding, and was instituted for the purpose of investigating charges of serious personal and official misconduct and malfeasance, against an officer appointed by this court, to ascertain whether he is a suitable person to exercise the high and honorable official functions with which he is now entrusted. As

this investigation involves charges which reflect upon the character of the respondent, and may affect his valued interest in the office which he now holds, the court should proceed with great caution, and carefully observe principles of law well settled by reason and judicial decisions.

This court certainly has the right to remove commissioners of the circuit court from office. The power of removal is incident to the power of appointment, where no definite tenure of office is fixed by law. This question needs no further consideration, as it is settled by adjudged cases. *Ex parte Hennen*, 13 Pet. 230; *Blake* v. *U. S.*, 103 U. S. 227; *Ex parte Wall*, 107 U. S. 265, 2 Sup. Ct. Rep. 569.

No special mode of procedure for removal has been prescribed by statute, and the precedents of the common law may properly be followed. Any mode of procedure would accomplish the ends of justice, if the respondent has reasonable notice of the charges against him, and is afforded full opportunity for explanation and defense. While the appointing court has the power to remove commissioners at pleasure, such discretion should be a sound and legal one, and such power should never be capriciously or arbitrarily exercised. Commissioners can materially assist the court in the administration of public justice, and, by long experience, they become more familiar with the forms of legal procedure, and more discreet and efficient in the performance of their important official duties. As no tenure of office is defined by law, they may well presume that they will be retained so long as they are discreet and efficient, and conduct themselves with propriety.

It is all important to good government, and the public interests, that an officer who exercises important judicial functions should be free in thought, and independent in judgment, when he acts in the administration of justice and the enforcement of the law. The course of justice would be impeded, and the efficiency of the commissioner would be greatly impaired, if his freedom of action was restrained by continual apprehensions of removal from office on account of honest official mistakes and errors of judgment, or by judicial caprice, or by the clamor of individuals excited by personal prejudices and hostility. While human nature is very imperfect, and continually liable to error, there are some just principles of action, and certain proprieties of conduct, established by law, or by a virtuous and enlightened public sentiment, that should be observed and practiced by persons exercising judicial functions. Human observation and experience have fully demonstrated the fact that temperate, moral, and industrious habits render all men more useful and successful in the various pursuits of life; but neither the law nor general public sentiment regard them as indispensable qualifications for office. I will not, in this case, discuss this question in its moral or social aspects, but merely say that, in my opinion, occasional drunkenness lessens the influence and efficiency of a commissioner, and that habitual drunkenness, or intoxication when in the discharge of official duty, is a sufficient cause for his removal from office.

A commissioner should not be an active partisan in political contests, but, as a citizen, he may properly express his candid opinions about can-

didates for office, and freely discuss measures that relate to the industrial and material interests of the country. A commissioner violates the law if he sits in judgment in any case in which he has a personal interest, and he acts with impropriety when he hears a matter in which one of the parties is his near kinsman. As a judicial officer, he should be strictly impartial, avoid all appearances of acting under improper influences, and be free from all temptations to wrong, so that his acts may be above suspicion, and thus deserve and maintain public confidence and respect.

As a security for the independence and impartiality of judicial officers, there is a general rule, of great antiquity in the common law, and now fully recognized and observed in every enlightened system of jurisprudence, that renders judges of courts of general and superior jurisdiction exempt from liability to civil actions and indictment for their judicial acts and affords the same immunity to judicial officers of limited and inferior authority, when they act within the scope of their jurisdiction, with integrity and without malice or corruption. *Randall* v. *Brigham*, 7 Wall. 523; *Bradley* v. *Fisher*, 13 Wall. 335.

Commissioners of the circuit court are officers appointed by the court, and authorized by law to exercise important judicial and ministerial functions in aid of the circuit and district courts in the administration of justice. They are appointed by the circuit court, but their powers are *expressly conferred upon them by law*, and they are not strictly officers of such courts, and subject to their supervisory control. Spear, Fed. Jud. 377, and cases cited. In this district, rules of court have been formulated and adopted for the guidance and assistance of commissioners in the performance of their difficult and important duties, but do not interfere with the exercise of their judicial discretion in hearing cases before them. The criminal jurisdiction of commissioners is defined by statute, but there is no full, accurate, and distinctive mode of procedure pointed out by which such authority shall be exercised. They are required to act in conformity with the "usual mode of process" prevailing in the state in which they are appointed. This provision of the statute has given rise to diversity of practice in the several states, and this want of uniformity has caused some apparent conflict in judicial decisions. In the cases of *U. S.* v. *Ebbs*, 10 Fed. Rep. 369, and *U. S.* v. *Harden*, Id. 802, I had occasion to express my views as to the powers, duties, and modes of procedure of commissioners, as affected by the laws of this state, and the subject needs no further consideration in this case.

Now that I have expressed, in general terms, my views upon some questions of law involved in this case, I will refer more particularly to the charges and specifications as I have formulated them, in substance, from the affidavits on which this rule was granted: (1) "Affiant further swears that the said Geo. G. Eaves has been a notoriously violent and bitter partisan during the late campaign in this state, habitually becoming intoxicated, and, on one or two occasions, acted so violently as to attempt to engage in and produce a personal conflict with weapons, with his opponents, by himself and his supporters;" (2) that the respondent,

as commissioner, discharged certain defendants who were brought before him for trial, when the evidence on the hearing was sufficient to authorize him to bind them over for trial; (3) that respondent so arranged certain cases, 10 in number, in which nearly the same witnesses were used, so as to have trials on consecutive days, and the witnesses were allowed to prove more mileage than they had actually traveled, and such false charges were within the knowledge of the respondent.

At the hearing of this rule the counsel for the prosecution confined his argument to the last specification, and abandoned the other charges. As to the abandoned charges I deem it proper to say that the preponderance of evidence sustained the denials and explanations contained in the respondent's answer, and there is no evidence that he was ever intoxicated while in the discharge of official duty.

There is no direct and positive evidence that respondent improperly arranged cases for trial on consecutive days, but the counsel for the prosecution pointed out some entries on the face of the process that might give rise to a suspicion of such arrangement between the respondent and the acting deputy-marshal. In their affidavits they both directly deny any such arrangement, and positively aver that the cases were promptly heard and disposed of on the days when defendants were arrested, and before the respondent for hearing; and that the defendants were arrested and brought to trial as speedily as possible, under the circumstances. When commissioners issue warrants they cannot fix any certain return-day of process, as they cannot know the time when defendants will be arrested. When arrested, the law requires the marshal or his deputy to carry them, as speedily as possible, before the nearest commissioner for examination. As the arresting officer has no general authority to commit to prison, and his compensation for guard duty is so uncertain, and he is bound to keep defendants safely, we may well presume that he cannot attend to more than one case a day, when defendants are arrested at a distance from the place of hearing. When a deputy-marshal does return two or more warrants on the same day, and all the cases can be conveniently heard on that day, the commissioner ought to hear all the cases, and he does not properly discharge his duty if he continues cases to another day, for the purpose of increasing his fees.

The evidence tends to show that the accounts for mileage sworn to by some of the witnesses were fraudulent, and the payment of such accounts has been suspended by the court by an order directed to the marshal. The evidence shows that there was a possibility of the witnesses having actually traveled the distance stated in their accounts for mileage, and they are entitled to an opportunity of showing the justness of their claims. There is not sufficient evidence to satisfy me that the respondent had any complicity in the probable fraud perpetrated by the witnesses. The usual and legal evidence upon which commissioners and clerks of court rely in taxing fees and mileage is the oath of the witnesses, and the respondent, in his answer and affidavit, positively avers that he had no knowledge of any false charge for mileage; that he had no personal information as to the distance to the homes of the witnesses; and he al-

ways availed himself of every precaution in his power to guard against frauds on the government.

I think that it would be very unjust, and contrary to the general and familiar rules of evidence, to infer fraud and crime from circumstances, which may reasonably be supposed to be accidental or inadvertent, against the positive affidavit of a public officer whose good personal and official character is sustained by the evidence of many of his fellow-citizens. The law never presumes fraud, wrong, or guilt, but rather imputes innocence and honesty to the conduct of men; and the principles of common justice, and the fundamental rules of evidence, require charges of serious misconduct to be clearly proved before the person accused shall be condemned by a court of justice. There is an old and well-settled rule of evidence, that when acts are of an official nature, or require the concurrence of official persons, everything is presumed to be rightly and duly performed until the contrary is clearly shown; and this rule is especially applicable when a person is required by law to do an act the not doing of which, honestly and faithfully, would make him guilty of a criminal neglect of duty. Broom, Law Mer. 730.

In one of the affidavits upon which this rule is founded there is more than criminal neglect charged,—there is a positive and serious crime alleged. Before the respondent could be criminally punished for this alleged offense, so positively denied, he would be entitled to the common-law and constitutional right of trial by jury. In this civil proceeding, which so seriously affects the reputation and other interests of the respondent, he is entitled to all the presumptions of law as to innocence which are allowed on criminal trials. The counsel of respondent in their argument and brief insist, with much force, that, as the evidence shows no motive for wrong, there arises a strong presumption of honesty and integrity of purpose. The actions of rational men are usually prompted by some motives. A motive is some cause or reason that moves the will, and induces action. A crime is a voluntary act, proceeding from a wicked motive, and while it is sometimes difficult to trace the connection between the wrongful act and the inducing motive, human reason and experience teach us that few men will voluntarily expose themselves to criminal punishment, contempt, and infamy without being influenced by some strong impelling cause. In the investigations of alleged crime, there is a just and reasonable rule that, when the evidence of the offense charged is conflicting or doubtful, the absence of all proof of an inducing motive gives rise to a strong presumption of innocence. In this case there is *no evidence* that the respondent derived or expected to derive benefits of any kind from the seemingly fraudulent accounts of the witnesses, and they were not his familiar acquaintances or friends.

There are many presumptions of law and fact in favor of the respondent, and they are sustained by a very decided preponderance of the evidence, and I am satisfied that he is not guilty of any fraud or dishonesty in the transaction mentioned in the third specification of this rule, in relation to fraudulent mileage. I deem it unnecessary to make any extended reference to the circumstances of a personal nature connected with

this controversy, as developed by the evidence. There seems to be two parties in the county of McDowell actuated by feelings of bitter personal hostility towards each other, arising out of local affairs. A court of justice is not the proper forum in which such personal and local controversies should be carried on under the forms of legal procedure, which are designed and adopted for the purpose of preserving the courts of justice from official malfeasance, securing the government against fraud, and promoting the common good and general welfare of society. If these local circumstances and personal hostilities had been known to the court as fully as they now appear, this rule would not have been granted in its present form, but a mode of procedure more convenient, and less expensive, would have been adopted, by referring the matter of complaint to the district attorney for his investigation and report.

The personal and official conduct of the respondent, as shown by the evidence, does not, in all respects, deserve the approbation of the court, but I readily accord to him his legal rights; and, with a kindly admonition to so conduct himself in future as to avoid even the appearance of evil, this rule is discharged. Let the proper order be drawn.