The People of the State of New York ex rel. John B. Sampson, Relator, *v.* Bernard J. York and Others, Composing the Board of Police Commissioners of the City of New York, Respondents.

*Police board — removal of a member of the force — review of its decision in so doing.*

In a proceeding by certiorari to review the action of the board of police commissioners of the city of New York in removing a member of the force, a distinction exists between a case in which the question is whether the member has presented a sufficient excuse, and a case in which the member denied absolutely that he has been guilty of the offense charged against him.

In the first case, the duty of the commissioners is to determine, not only whether the excuse existed, but whether it was sufficient to exonerate the accused person — a matter largely resting in their discretion.

In the second case, the question is whether there is sufficient evidence to warrant a finding that the accused was guilty of the act with which he was charged; and, in reviewing the decision of the commissioners upon that question, the appellate court will annul it where the verdict of a jury upon the same testimony against the member would be set aside as against the weight of evidence.

CERTIORARI issued out of the Supreme Court and attested on the 1st day of February, 1898, directed to Bernard J. York and others, composing the board of police commissioners of the city of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular their proceedings in regard to the dismissal of the relator from his position as a member of the police force of the city of New York.

*Daniel F. Kiely,* for the relator.

*Terence Farley,* for the respondents.

RUMSEY, J.:

The charge against the relator was, that about half-past four o'clock on the morning of November 23, 1897, at First avenue and Seventy-third street, he accosted one Michael Hennessey, who, in company with two friends, was on his way to work, " grabbed the said Hennessey " and conveyed him from First avenue to the dump at the foot of Seventy-third street, where he fired a shot at him, compelling him to jump into the river. After testimony had been taken before one of the commissioners, and the matter reported to the board, a resolution was adopted by a majority vote dismissing him from the police force. Upon this writ, sued to review that conviction, the relator claims that the evidence was not sufficient to sustain the action of the board. The rule established in this class of cases, and which has been carefully followed by this court, is that the action of the commissioners will be sustained unless it clearly appears that the evidence upon which it was based was entirely insufficient. The same rule obtains as that which is applied upon the review of a verdict of a jury; that the verdict will be sustained unless, it clearly appears that it was the result of passion, prejudice or mistake. (*People ex rel. Schaefer* v. *Martin,* 28 App. Div. 73.) A distinction is to be noted between those cases where the act charged is admitted by the relator, and the question is whether he has presented a sufficient excuse, and cases like this one, where the accused person denies absolutely that he has been guilty of the offense alleged against him. In the first case the commissioners are to determine not only whether the excuse existed, but whether it was sufficient to exonerate the accused person, a matter

which must of course to a considerable extent rest in their discretion. In the other class of cases, the only question is whether there is sufficient evidence to warrant a finding that he was guilty of the act with which he was charged. That is the question here. In examining it, we are bound to consider, in the first place, the nature of the charge, and the source whence it originated. The charge itself is one which upon its face is improbable, not to say incredible.

The act, if performed, was one of sheer wantonness, and it is hardly possible to conceive that, in view of the probable consequences to the man driven into the water, and the possible result to the policeman himself, anything of the kind would be done. The complainant and his witnesses were conceded to be persons of bad character who had a standing feud with the police, and were at all times under their surveillance, and it is not unlikely these relations may have tended to some extent to bring about the making of the charge. The evidence must be examined in view of these undisputed facts. In the examination of it we are brought face to face with a direct contradiction. Hennessey alleges that, at about half-past four o'clock on the morning of the twenty-third of November, he, with two acquaintances, was going to a stable in Seventy-fourth street, to get a peddler's wagon; when at the corner of that street he met Officer Sampson, the relator, who asked him where he was going. After some considerable conversation the officer took out his stick and sounded it twice on the sidewalk and one officer came out of a restaurant on the other side of the street and another one came out from the other side of the street, and the three searched Hennessey and his acquaintances and then it was proposed to take them down to the pier. He said then that Sampson walked them from First avenue to the Boulevard and on the Boulevard there was an old man named Lawton, a watchman, and there was a light inside of his place; and the officer knocked and the watchman came out with a lantern and looked at their faces and was asked if he knew any of these men, to which he replied he did not. The other officers then took them down to the river and said they would take them to the pier and give them a good swim. They were taken to the pier and put upon the end of the dump where there was considerable snow and then were required to jump into a scow and then into the water, the compulsion being brought about by the

firing of a pistol at them.   Hennessey testified that after jumping into the water he went to the foot of Seventy-fourth street and thence to the station house on Seventy-eighth street, where he made a complaint and a roundsman was sent out to investigate.   One of Hennessey's companions was sworn, but his testimony was such that it is utterly unreliable and nothing intelligible can be derived from it, so that it cannot be used either to corroborate him or to disprove the charge which he made, but must be discredited as of no force whatever.   The only fact as to which he was corroborated was that he appeared at the station house in wet clothes and without a hat, and that he made a complaint that he had been driven into the water.

The relator in his defense contradicted absolutely the story of Hennessey, and it was shown in addition by the watchman Lawton that no such occurrence took place as was testified to with regard to him.   Lawton testified that he saw none of these persons on the morning of the twenty-third of November, and that nothing occurred between himself Hennessey and Sampson, such as Hennessey testified to.   It was not disputed that on the morning of the day in question it was snowing, and it appeared from the testimony of the relator's witnesses who went to the pier after Hughes had been sent there from the Seventy-eighth street station, that they examined the location and found no footsteps, or anything to indicate that anybody had been there that morning before they made the examination.   It was hardly possible, if this be the fact, that there could be any truth in Hennessey's story, because, as he states, at least six men went down to the pier and stood there for a considerable time.   It also appears from the testimony of the watchman on the pier that he had there several fierce dogs, accustomed to bark violently whenever anybody came there ; that the dogs were perfectly quiet, and made no alarm at any time in the morning until Sampson and Hughes came there, after Hughes had been sent to investigate, when he was aroused by the alarm which they then gave.   He testified positively that the dogs were taught to give the alarm when anybody came upon the pier ; that they gave no alarm that morning until these two men came and that he heard no pistol shot, which he clearly must have heard had anything of the kind occurred.   Several other witnesses who were in the neighborhood testified that they heard no

pistol shot, and it is almost incredible that if anything of the kind had occurred at that hour in the morning, some of these men who were in the vicinity would not have heard it, and their attention have been attracted by it. There was considerable other testimony which it is not now necessary to recapitulate, tending to corroborate Sampson and to contradict Hennessey.

Upon a careful consideration of all the testimony we are clearly of the opinion that if upon this testimony any jury had rendered a verdict against the relator, the application of well-settled rules would have required us to set it aside as against the weight of evidence. The same consideration must apply here, and for that reason we must reverse this conviction.

The proceedings must be annulled and the relator reinstated, with costs.

Van Brunt, P. J., Ingraham and McLaughlin, JJ., concurred.

Proceedings annulled and relator reinstated, with costs.