THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN H. SHIELS, Appellant, v. FRANCIS V. GREENE, as Police Commissioner of the City of New York, Respondent.

EVIDENCE — ACTS OF POLICE OFFICER INCOMPETENT UPON QUESTION OF HIS SUCCESSOR'S ALLEGED NEGLECT OF DUTY.— Upon the trial of one acting as a captain of police of a precinct in the city of New York who was charged with neglect of duty in having omitted to suppress a disreputable house therein, when there is testimony tending to show that he had no knowledge of any improper conduct at the house in question, evidence that his predecessor had made an arrangement with a secret service bureau to bribe detectives in the employ of the Society for the Prevention of Crime to furnish information as to contemplated raids upon the house is not only incompetent, but essentially harmful as tending to establish a basis for the assumption that the defendant was no better than his predecessor and operated with the house in the same way, and its reception constitutes reversible error.

*People ex rel Shiels* v. *Greene*, 91 App. Div. 613, reversed.

(Submitted June 3, 1904. decided August 5, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 27, 1904, which affirmed the proceedings of the defendant in dismissing the relator from the police force of the city of New York.

The facts, so far as material, are stated in the opinion.

*Louis J. Grant* for appellant. The conviction should not be sustained, because of erroneous rulings by the trial commissioner in the admission and exclusion of evidence, to the relator's prejudice. (*Robinson* v. *N. Y. El. R. R. Co.*, 175 N. Y. 220.)

*John J. Delany, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondent. The effect of the unanimous affirmance by the Appellate Division is to preclude review of the merits of the case by the Court of Appeals. (*People ex rel.* v. *Board of R. R. Comrs.*, 158 N. Y. 421; *People ex rel.* v. *Barker*, 155 N. Y. 322; *People ex rel.* v. *Barker*, 152 N. Y. 7.) Only errors of law, materially affecting the rights of the relator, will be considered on this appeal. (*Matter of Cross*, 85 Hun, 343; *People ex rel.* v. *Roosevelt*, 10 App. Div. 364; *People* v. *Glennon*, 175 N. Y. 45.)

O'Brien, J. The relator was removed by the defendant from the police force after a trial upon written charges, which amount to neglect of duty; but to be more specific, the charge was that the relator having been assigned and detailed as acting captain of police in command of the 19th police precinct, neglected and omitted to suppress a certain house of ill-fame therein; that from the 15th to the 30th of July, 1901, the relator knowing that a notorious house of prostitution was kept and maintained at No. 148 West 33d street, willfully neglected and omitted to suppress the same or to take any steps to that end. The relator pleaded not guilty to the charge and after a trial he was convicted and removed from the force. The Appellate Division has reviewed the case upon a writ of certiorari and has unanimously affirmed the determination and dismissed the writ.

The only witnesses called to prove the charges were four private detectives in the employ of the Society for the Prevention of Crime, known as the Parkhurst society. The relator and ten other witnesses were sworn in his behalf and gave testimony tending to show that he had no knowledge of any improper conduct at the house in question. Six of the witnesses thus called were officers of the force attached to the precinct and they all testified that they made visits to the house during the time the relator was in command and personally inspected it by his direction, but observed nothing to indicate

that it was a disorderly house, or that improper practices were being conducted therein. They were corroborated by three business men, residents of the neighborhood, who gave similar testimony as to the character of the house. It is quite evident that the commissioner who made the determination in question believed the four detectives rather than the ten witnesses sworn for the relator, and since the learned court below has unanimously affirmed the determination the merits of the case are not open to review in this court.

We can deal only with exceptions taken in the course of the trial that raise some question of law. It should be here observed that the prosecution was represented before the commissioner by two assistants of the district attorney, who had charge of the examination of witnesses and the conduct of the case against the relator, and hence no fair excuse can be given for any flagrant breach of the rules of law or evidence in such an investigation. It appears from the record that just before the close of the testimony the commissioner recalled one of the Parkhurst detectives, who had been first sworn in the case, and of his own motion proceeded to interrogate him as follows: " Q. Did you at any time send word that a raid was to be made on 148 West 35rd street? A. Yes. Q. When did you send the message? A. On July 20th at five-thirty P. M. Q. From where? A. The telephone station in the drug store at 34th street and 7th avenue, the northwest corner. Q. And whom did you send a message to? A. To Edgar A. Whitney. Q. Where was Mr. Edgar A. Whitney? Who is he? A. He ran a secret service bureau and Mr. Whitney agreed for several hundred dollars a month. Q. Why did you send word to Mr. Whitney? A. He paid me for doing it. Q. He paid you for sending word to him that a raid was going to be made? A. Yes, sir. Q. What did he have to do with it? A. He has testified. Q. I don't know anything about his having testified, but what has he to do with the business in connection with your society? A. None. Q. Then he privately paid you to furnish information in regard to your duties? A. He did, sir. Q. Is that what I understand?

A. He did, sir.   Q. What, that with the knowledge and con-
sent of the authority that you work for?   A. Yes, sir, they
were aware of every move I made.   Q. Still I don't under-
stand what Mr. Whitney had to do with it and that is what I
want to know.   What was his position?   Why should you
send reports to Mr. Whitney?   A. Mr. Whitney claimed to
represent the captain.   Q. What captain?   A. The captain
of the 19th precinct.   In all Mr. Whitney paid me $320.
Q. Who was the captain of the 19th precinct at that time?
A. Captain Flood.   Q. And you were being paid at the same
time by what society?   A. The society for the prevention of
crime.   This, Mr. Commissioner, was in the nature of a bribe
to give him tips of raids that were to be made, and I gave
him a great many tips but not one that was *bona fide*.
Q. This tip that you gave was a false tip?   A. Certainly it
was."

Thus the commissioner succeeded in proving and placing
upon record the fact that the captain of the precinct had
made an arrangement with a secret service bureau to bribe
the detectives of the Parkhurst society to furnish him infor-
mation as to contemplated raids upon the house in question,
but the captain that did all that was not the relator but Cap-
tain Flood, whose conduct had nothing to do with the case.
The above questions put by the commissioner himself were
objected to, but the objection was overruled and the relator's
counsel excepted.   At the close of this examination both the
assistant district attorney in charge of the prosecution and the
relator's counsel joined in a request to strike out the testi-
mony.   The assistant district attorney said: "I consent that
all of Mr. Dillon's testimony be stricken out."   To which the
commissioner replied as follows: "I don't think so.   I want
to know the situation and it is on the record and I will let it
stand."

The assistant then stated: "With all respect to the com-
missioner I would like to have it go on the record that the testi-
mony of Mr. Dillon that he last gave in answer to the
commissioner — I would like to have my desire to have that

evidence stricken out appear on the record." Commissioner Piper: "Yes, enter that upon the record and I deny your motion to strike it out." Thus the commissioner persisted in putting into the record incompetent testimony against the protest not only of the relator's counsel, but his own counsel. The testimony was not only incompetent, but essentially harmful. The plain purpose was to prove the course of business in the precinct as between Captain Flood and the houses of this character as a basis for the assumption that the relator was no better than Flood and operated with the house in question in the same way. In other words, the corrupt acts of Flood were imputed to the relator.

The assistant district attorney was so clear that this testimony had been improperly injected into the case by the commissioner himself that at the close of the whole proceeding he made the following statement to the court: "I am second in my desire to no one to have all the testimony before the commissioner, but I am constrained to think that the evidence given by Dillon when recalled would allow a reversible error to creep into the case and I must respectfully ask, Mr. Commissioner, that it be stricken out." Commissioner: "No, I will not consent to it. That testimony is in the case and I will allow it to remain." It is plain that the learned commissioner placed much stress upon this testimony, since he insisted upon retaining it in the case against the protest of both parties. I think that a person who has served honorably upon the police force for nearly twenty years, as the relator has, should not be deprived of his office through the forms of a judicial proceeding affected with such a serious error. The question "whether in making the determination any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator" is open to review in this court (Code Civ. Proc. § 2140), and questions of like character have often been reviewed. (*People ex rel. McAleer* v. *French*, 119 N. Y. 502; *People ex rel. Hogan* v. *French*, Id. 493; *People ex rel. O'Callaghan* v. *French*, 123 N. Y. 636; *People ex rel. Kasschau* v. *Police Comrs.*, 155

N. Y. 40 ; *People ex rel. Shuster* v. *Humphrey*, 156. N. Y. 231 ; *People ex rel. Grogan* v. *York*, 166 N. Y. 582 ; *People ex rel. Smith* v. *Hoffman*, Id. 462 ; *People ex rel. Clarke* v. *Roosevelt*, 168 N. Y. 488.)

The order of the Appellate Division and the determination of the commmissioner should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., MARTIN, VANN and WERNER, JJ., concur ; BARTLETT, J., dissents ; CULLEN, J., not voting.

Order reversed, etc.