In the Matter of the Application of MAX A. GREENEBAUM, Appellant, for a Writ of Certiorari against THEODORE A. BINGHAM, as Police Commissioner of the City of New York, Respondent.

New York (city of) — removal of police officer by police commissioner — officer entitled to fair trial before commissioner — commissioner cannot act upon private information and reject evidence of witness.

A fair trial of a member of the New York police force requires that the accused shall be confronted by the witnesses against him and given an opportunity to hear their statements under oath, and to cross-examine them to a reasonable extent. Hearsay evidence cannot be received; evidence cannot be taken in the absence of the accused, and the trier of the fact can find facts only on the evidence and not on his own knowl-

edge, except such facts as may be the subject of judicial notice; hence, it is error for a deputy commissioner to act upon private information received in the absence of relator and for that reason reject the evidence of an important witness.

*Matter of Greenebaum,* 137 App. Div. 925, reversed.

(Argued March 13, 1911; decided March 28, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 31, 1910, which dismissed a writ of certiorari and affirmed the proceedings of the defendant in dismissing the relator from the police force of the city of New York.

The facts, so far as material, are stated in the opinion.

*A. S. Gilbert, Julius M. Mayer* and *Maurice Meyer* for appellant. The relator appellant as a member of the uniformed force of the police department was entitled to a fair trial and to a decision on the evidence submitted to the trial commissioner. (*People ex rel. Kasschau* v. *Police Comm.,* 155 N. Y. 44; *People ex rel. Carney* v. *Scannel,* 80 App. Div. 323.) The commissioner had no power to disregard the testimony of the witnesses Marshall and Poole adduced at the trial. (*People ex rel. Kasschau* v. *Police Comm.,* 155 N. Y. 44; *People ex rel. Carney* v. *Scannel,* 80 App. Div. 323; *People ex rel. Dermody* v. *York,* 50 App. Div. 360; *People ex rel. Bockell* v. *McLean,* 17 N. Y. Supp. 476; 133 N. Y. 527.)

*Archibald R. Watson, Corporation Counsel (Theodore Connoly* and *Harry Crone* of counsel), for respondent. The police commissioner did not commit reversible error in criticising the testimony of witnesses. (*People ex rel. Weston* v. *McClave,* 123 N. Y. 512; *Brown* v. *Burns,* 8 Mo. 26; *Bradley* v. *Mirick,* 91 N. Y. 293; *Gill* v. *People,* 3 Hun, 187; 1 Wigmore on Ev. 883; *City of South Omaha* v. *Fennell,* 94 N. W. Rep. 632; *Baur* v. *Beall,* 14 Col. 383; *People ex rel. Moynihan* v. *Greene,* 179 N. Y. 253; *People ex rel. Cross* v. *Martin,* 85 Hun, 343; *People ex rel. Smith* v. *Martin,* 85 Hun, 359.)

Vann, J.    The relator, a member of the police force of the city of New York, was charged with violating the rules of the department and after a trial was removed by the commissioner.    The rule in question provided that members of the force " shall not willfully maltreat nor use unnecessary violence to any person, prisoner or otherwise."    It was alleged in the charge that the relator, a patrolman, " during his tour of patrol duty from 10 p. m. October 6th, to 2 a. m. Oct. 7th, 1908, willfully maltreated and used unnecessary violence to patrolman Michael J. McGrath."    While there was ample evidence to sustain the charge there was a sharp conflict in the versions of the witnesses.

It appeared that on the night in question Patrolman McGrath had been assigned to a duty which required him to wear citizen's clothes.    Shortly after eleven o'clock, while sitting on the steps in front of a pawnbroker's office waiting for a superior officer with whom he had an appointment, he fell asleep and was found in that condition by the relator as he was patroling the street.    The relator testified in substance that he did not know McGrath and finding him dressed in an old suit of citizen's clothing asleep in the street, at that hour, with his head down and his elbows on his knees, thought he was intoxicated and a rough character.    He shook him three times to wake him up, when McGrath sprang forward, seized him by the arm and struck him with a blackjack, just grazing his face.    The relator then hit McGrath with his nightstick, whereupon McGrath drew a revolver and pointed it at the relator, who in turn drew a revolver and said, " Drop that or I will shoot."    McGrath said nothing and still held his revolver in a threatening attitude when the relator fired at his arm to make him drop his revolver.    McGrath still said nothing but apparently continued to take aim, when the relator fired again almost instantly.    At that time a third officer ran up and arrested McGrath, who had two fresh bullet wounds in his arm and a contusion on the left ear.

On the other hand, McGrath testified that he had been up the night before with his sick wife and while waiting at the

time and place in question to keep his appointment with
another officer, fell asleep and was awakened by a blow on
the ear. He jumped up in a dazed condition, backed away
and as the relator raised his nightstick to hit him again, drew
a blackjack and raised it, whereupon he was shot twice by
the relator in the arm. One of the wounds was serious and
for a time placed McGrath's life in peril. He denied that
he was intoxicated, but said he had taken three table glasses
of beer with his supper and two ponies of beer in the after-
noon before supper. He also testified that at the outset, as he
jumped up he told the relator that he was a " cop," meaning
a policeman, and that he at no time drew a revolver, although
he had one on his person.

The version of each of these parties was corroborated to
some extent by several witnesses, and the conflict was such
that the case could have been decided either way. One Mar-
shall, apparently disinterested, was called by the complainant,
but supported the relator in nearly all the essential parts of his
story. There is nothing in his evidence as printed in the
record to raise any suspicion as to his truthfulness. After he
had testified, one Poole was called by the relator and swore
that he found McGrath asleep in " the door of the pawn
shop " and shook him, but could not wake him up, and then
went on about about his business. He was asked ·by the
deputy commissioner who conducted the trial and heard the
evidence, " You tried to shake this man and could not get
him up ? " The witness answered, " Yes, sir. I got a block
and a half away when I heard the shooting and came back to
that spot and saw the man coming —." He did not finish
the sentence, for the deputy commissioner interrupted him and
apparently addressing the relator said, " As to one of your
witnesses, Greenebaum, I am informed on most reliable
information, that he was not there. As to this witness he
never saw it. There is no question about that. He did
not shake McGrath." A colloquy followed between the
deputy commissioner and the relator from which it appeared
that the commissioner referred to the witness Marshall

when he said that he was informed "on most reliable information" that one of the relator's witnesses "was not there." The trial had not ended when this took place, and several other witnesses testified before the evidence was closed and the case submitted. Nearly three months later the deputy commissioner filed a decision in which he found the relator guilty as charged, and recommended that he be dismissed from the force. Six days afterward the police commissioner approved the recommendation and removed the relator from his position as patrolman. The Appellate Division reviewed the proceeding upon certiorari and "unanimously ordered that the proceedings of the respondent be and the same hereby are in all things affirmed and said writ dismissed," with costs.

The relator could be lawfully removed only "for some legal cause, to be ascertained and adjudged as matter of fact upon a hearing." (*People ex rel. Kasschau* v. *Board of Police Comrs.*, 155 N. Y. 40, 44.) While the hearing may be more or less informal, the trial must be fair in all substantial respects. Some latitude is allowed as to rules of evidence, methods of examination and the like, but no essential element of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon review. A fair trial, according to existing practice, requires that the accused shall be confronted by the witnesses against him and given an opportunity to hear their statements under oath, and to cross-examine them to a reasonable extent. Hearsay evidence cannot be received; evidence cannot be taken in the absence of the accused and the trier of the fact can find the fact only on the evidence and not on his own knowledge. Facts of such common knowledge as to become the subject of judicial notice without proof are an exception to the general rule and not now important. The use of an officer's record, not as evidence of guilt but merely to fix the punishment, is no departure from these rules.

The relator did not have a fair trial. The commissioner himself did not hear the evidence nor see the witnesses, but acted upon the report and the recommendation of the deputy

commissioner. A part of that report is the official announcement or ruling of the deputy commissioner, made while the trial was in progress, and before the evidence was closed, that a witness who had sworn that he was present when the occurrence took place, and that the facts were substantially as the relator claimed, was not present and did not see the event at all. The deputy commissioner based this statement on what he said was the "most reliable information," and we have no doubt he thought so, but he did not state the source or nature of his information, nor give the name of his informant, nor call him as a witness. Thus the trier of the fact, acting upon private information received in the absence of the relator, rejected the evidence of an important witness on account of something that somebody at some time had told him. If he had called his informant as a witness, or disclosed his name so that the relator could have called him, *non constat* it would have appeared that the information deemed by the deputy commissioner "most reliable" would have turned out most unreliable.

The relator having no counsel made no request and took no exception, and it is claimed that he thus waived the error, but the same claim, made under similar circumstances, was overruled in *People ex rel. Kasschau* v. *Board of Police Comrs. (supra).*

While we deem it our duty to reverse the order of the Appellate Division and the determination of the commissioner, owing to the gravity of the offense charged and the strong evidence given in its support, we think an opportunity should be afforded for further investigation, and accordingly we order a new trial. (*People ex rel. Shiels* v. *Greene*, 179 N. Y. 195, 200.)

The order should be reversed, the determination of the police commissioner annulled and the proceedings remitted for a new trial before the commissioner, with costs to abide event.

Cullen, Ch. J., Willard Bartlett, Hiscock and Chase, JJ., concur; Haight and Werner, JJ., absent.

Order reversed, etc.