THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. DWYER, Relator, *v.* ANGUS D. MACAFFER, as Commissioner of Public Safety of the City of Cohoes, N. Y., Respondent.

Third Department, July 6, 1922.

Municipal corporations — officers — certiorari to review discharge of police officer by commissioner of public safety — evidence insufficient to warrant discharge — officer reinstated — information in possession of commissioner, not disclosed at hearing, no basis for dismissal.

A police officer who was dismissed from the police force by the commissioner of public safety of the city of Cohoes, after being found guilty of insubordination, neglect of duty and breach of rules and regulations, upon a hearing before the commissioner, will be reinstated where an examination of the evidence discloses no proof justifying such dismissal.

Information against the officer, in possession of the commissioner, which he did not disclose at the hearing, cannot be used as a basis for findings adverse to the officer.

CERTIORARI issued out of the Supreme Court and attested on the 23d day of April, 1921, directed to Angus D. MacAffer, commissioner of public safety of the city of Cohoes, commanding him to certify and return to the office of the clerk of the county of Albany all and singular the proceedings had before him . in relation to the trial, conviction and dismissal from the police force of the city of Cohoes of the relator, John J. Dwyer.

*M. James Conboy,* for the relator.

*Henry S. Kahn,* for the respondent.

VAN KIRK, J.:

The charges against the relator were insubordination, intoxication, neglect of duty and breach of rules and regulations in force; and it was specifically charged that on the night of February 15, 1921, and the morning of February 16, 1921, Dwyer failed to arrest Cunningham and Killian, or either of them, although they were in his custody, after they had been guilty of a breach of the peace and other crimes; that he failed to arrest the parties, although in possession of a revolver in violation of the Sullivan Law;* that he agreed to let Cunningham and Killian go from custody, after a breach of the peace and other crimes, if they would turn over to one Edward Page a revolver which they had in their possession; that he failed to make report to his superior officers, the chief of police, or commissioner of public safety, and was guilty of neglect. of duty. After a hearing before the commissioner of public safety,

---

* See Penal Law, § 1897.— [REP.

the intoxication charge was dismissed, but the other charges were upheld and the relator was dismissed from the police force.

There was no proof justifying the findings made by the commissioner. On the evening of February 15, 1921, about eleven o'clock, Ryan and Dwyer, police officers, were in the police station. Word came by phone that there was disturbance at a place in the city of Cohoes maintained by one Edward Page. Dwyer said he would go and look after it. When he reached Page's place there was no disturbance and Page was not present. Officer Daley had gone with Dwyer to the Page place. They were told that Page had gone out. Daley went out to look for Page and later Dwyer followed. In about a half hour he returned to the police station and there were Page and two men, Cunningham and Killian. They had had some conversation with Ryan. Page said he had had an altercation with these men, Cunningham and Killian, after refusing to allow them to go up into the dance hall. Page then went out into the street; he was carrying a revolver in his hip pocket. He apparently had the suspicion that Cunningham or Killian had it. Dwyer took Killian and Cunningham into the chief's room, searched them and found no revolver. He then had an interview with Page in the chief's room. It developed that another man, McGarry, had been with Cunningham and Killian; he had gone up the hill. Page was asked if he wished to make any charge against the men and he said he did not, that he could not accuse them of having his revolver. Dwyer then started out, taking Killian and Cunningham with him, to look after McGarry. When returning near Page's place he says he kicked something in the street, picked it up and it was a revolver. The witness Duffy says he was at the corner and saw Dwyer pick up the revolver. Dwyer went directly to Page's place and there saw Page and the commissioner of public safety, MacAffer. He gave the revolver to Page in the commissioner's presence. It does not appear that Dwyer had seen any crime committed, or any disturbance or any breach of the peace. It does appear that Page, who should have been the complainant, refused to make any charge against either Cunningham or Killian.

The peculiar circumstance in the case is that the commissioner, MacAffer, intimates that he knows considerable about the affair and that, if he were not the commissioner, he would be the principal witness against Dwyer. He was present when Dwyer returned the revolver to Page and heard what was said and done. The only charge concerning which there is a suspicion against Dwyer is that he arranged with Page that, if the revolver was returned, Page would not make any charge against Killian and Cunningham.

The commissioner intimated at the hearing that he knew something about this. What he knew could only have been learned in the conversation which he heard at Page's, when there with Dwyer. Whatever he learned there was certainly communicated to him and he was the superior of Dwyer; he gave no direction to Dwyer to arrest these men. Dwyer testifies, referring to the time when he and the commissioner were at Page's place: " Q. And tell us what the Commissioner said at that time? A. He said: ' John, this shouldn't go on.' I said, ' What shouldn't go on? ' He said: ' Allowing these two people to go.' I said: ' I haven't got nothing on them. If Mr. Page wants to make a charge against them, I will arrest them, but I haven't got anything on them to make a charge.' " In Mr. Page's testimony are the following questions and answers: " Q. What did Dwyer say? A. Why, I don't recall the exact conversation, but the idea was that he had made arrangement with me in regard to returning the gun and it was returned. I don't believe he made any answer in regard to where he got it. Mr. Dawson [attorney for relator]: I move to strike out the portion of the answer ' that he had made the arrangement with me ' as not responsive to the question. Mr. Neary [attorney for the commissioner]: That may go out. The Commissioner: Strike it out. Q. Did he make arrangement with you, if you got the gun back, you would not prosecute? A. I believe he made that statement some time ago in police headquarters." The relator denies that there was any such statement or arrangement made, and witness Carr testified that he was at the police station when Cunningham, Killian and Page were there; the officer told Page that they could not hold these two fellows without charges and Page refused to prefer charges, " because he said all he wanted was his gun; he said he didn't care where he got it, or how he got it." The chief complaint against Cunningham and Killian was that they had taken Page's revolver. Upon this subject Page testified: " Well, the gun was carried in the hip pocket, which was very shallow, and it dropped out of the pocket, and I couldn't say when nor where." The information which Page is said to have given, at the police station, concerning the transaction at the dance hall, when Cunningham and Killian were present, was given in the presence of Officer Ryan and not in the presence of Dwyer.

If Commissioner MacAffer had information, which he did not disclose at the hearing against Dwyer, he was not justified in using it as a basis for his findings. (Matter of Greenebaum v. Bingham, 201 N. Y. 343.) If Commissioner MacAffer was not justified from what he learned at Page's in directing Dwyer to hold Cunningham and Killian, this record does not disclose any reason

why Dwyer, upon his own authority, should have held them. The determination of the commissioner must be reversed. (*People ex rel. Sampson* v. *York*, 35 App. Div. 430.)

The findings of the commissioner and the order of dismissal and the proceedings should be annulled and the relator reinstated, with costs. (*People ex rel. Sampson* v. *York*, 35 App. Div. 430.)

All concur.

Determination annulled and the relator reinstated, with fifty dollars costs and disbursements.