[File No. 6031.]

STATE EX REL. JOHN G. NESS, Respondent, v. THE BOARD OF CITY COMMISSIONERS OF THE CITY OF FARGO, NORTH DAKOTA, a Municipal Corporation, Organized under and Pursuant to the Laws of the State of North Dakota, and Consisting of the Following Named City Commissioners: A. T. LYNNER, President of said Commission, W. E. Black, Frank Anders, A. T. Peterson, and F. W. Sheffield, Appellants.

(245 N. W. 887.)

34

Opinion filed August 18, 1932. On rehearing December 19, 1932.

*Matthew W. Murphy,* for appellant.

*M. A. Hildreth,* for respondent.

BURKE, J. On the 5th day of August, 1931, written charges relating to his office as city assessor of the city of Fargo, together with a notice of hearing thereon were served upon J. G. Ness and on August 10, thereafter, the time set for hearing before the city commission, in the city of Fargo, Ness appeared specially objecting to the jurisdiction of the commission. His objection was overruled, but he remained and took part in the proceedings, objecting, through his attorney, to all the proceedings thereafter taken. On the record made, Ness was removed from office and on certiorari to the district court, the removal proceedings were held to be null and void and from the order and judgment entered in the certiorari proceedings the city appeals.

The respondent has filed motion to dismiss the appeal upon the theory that the institution of another action by the city commission immediately after the dismissal of the first action is a recognition of the validity of the judgment from which the city of Fargo appeals. It appears, however, that in the interim the city appointed an assessor in the place of Mr. Ness, and has the right to have the validity of the first removal determined on appeal. The motion to dismiss is denied.

The charges served upon Mr. Ness are in writing and were read at the beginning of the hearing. The record of the city assessor for the years 1930 and 1931, two copies of the Fargo Forum, a newspaper, containing statements purporting to have been made by Mr. Ness, the letter, exhibit C, to the Fargo Forum purporting to have been written by Mr. Ness and a copy of a long letter, claimed to have been written by Mr. Ness to Mr. C. M. Wade, tax supervisor, and the journal of the board of equalization of the city of Fargo for 1931 were offered and received in evidence over objection.

It is the contention of appellant that § 3791, Comp. Laws 1913,

gives the commission authority to suspend and discharge all appointive officers at will as provided in said section, namely: "The said commissioners shall by a majority vote of all the commissioners elected under this chapter have the power to appoint all officers and · subordinates in all of the departments of said city, and to suspend and to discharge the same at will under the limitations hereinafter provided."

It is clear from this statute, however, that there are limitations upon this power and the limitations on the power to remove are in § 3808, Comp. Laws 1913. This section specifically provides that "Every person appointed to any office may be removed therefrom by a majority of votes of all the members of the board of city commissioners, *but no such officer shall be removed except for cause nor unless charges are preferred against him and an opportunity given him to be heard in his defense.* The board of city commissioners may compel the attendance of witnesses and the production of papers when necessary for the purpose of such hearing, and shall proceed within ten days after the charges are filed with the city auditor to hear and determine the case upon its merits."

First, there must be some cause which authorizes the commission to act. Second, there must be charges filed which must relate to the official conduct of the officer. Third, he must be given an opportunity to be heard in his defense. These provisions necessarily require some kind of a hearing. Such proceedings are regarded as quasi judicial in character and hence a full compliance with the rule governing trials in court is not required. 2 McQuillin, Mun. Corp. 2d ed. § 587, p. 359 and cases cited.

In regard to the procedure article 273 of the Texas act (Waco City Charter) provides that "The city council shall have power to remove any officer for incompetency, corruption, misconduct or malfeasance in office, after due notice and an opportunity to be heard in his defense." This statute specifies the acts on the part of an officer which warrants the proceedings of removal by the city council, but is less specific than our statute about the proceedings for removal, which are not specified at all. It says nothing about the procedure. Our statute, after providing for the filing of charges and notice, states "the commission may compel the attendance of witnesses and the production of papers when necessary for the purpose of the hearing."

In the case of Riggins v. Richards, 97 Tex. 229, 77 S. W. 946, at page 948, the Texas Court said: "Appellant contends with much earnestness that article 273 does not, of itself, furnish authority upon which the city council could proceed to try the mayor of the city, because it provides no mode of procedure; in other words, it is claimed that the article is not self-acting. This language in article 273 'after due notice and an opportunity to be heard in his defense,' is very comprehensive and is pregnant with the idea of charges preferred, specifying the grounds upon which a removal is to be made, due notice to the accused, with the right to cross-examine the witness(es) produced against him and to furnish testimony to exculpate himself from the charges, which would secure the constitutional right of a fair and impartial trial. These are strongly implied by the language of the act, and that which the law implies is as binding as if written in the body of the act. Sutherland, Stat. Constr. § 334; United States v. Babbit, 1 Black, 55, 61, 17 L. ed. 94, 96.

"When power to perform an act is conferred by the Legislature upon a body of officers and no procedure is specified, the law will imply authority to do whatever is proper in the execution of the power consistent with the right of the accused to a fair and impartial hearing. State ex rel. Reid v. Walbridge, 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663; Armatage v. Fisher, 74 Hun, 173, 26 N. Y. Supp. 364; People ex rel. Stevenson v. Higgins, 15 Ill. 110; State ex rel. Ragsdale v. Walker, 68 Mo. App. 117; Re Eaves (C. C.) 30 Fed. 21."

Our statute, like the Texas statute, requires notice and an opportunity to be heard and the additional provision that the commission may compel the attendance of witnesses and the production of papers when necessary for the purpose of such hearing. What hearing? The hearing at which the defendant is required to be heard in his defense and for the purpose of this hearing the commission can compel the attendance of witnesses and the production of all necessary papers. It would be idle to give them any such power without the authority to use the witnesses as witnesses and the papers produced as evidence. It follows that the commission has implied authority to subpoena witnesses and papers and so far as the administration of the oath to witnesses is concerned the oath could be administered by a notary public, the city clerk or city auditor under § 833, Comp. Laws 1913.

The commission had jurisdiction of the defendant and of the subject matter and the only question that we can consider is, was there any evidence upon which the city commission could act.

It is conceded that the documentary evidence was offered without any identification. The copies of the Fargo Forum were offered and received in evidence and subsequently there was attached an affidavit of publication. The affidavit of publication on exhibit B is to the effect that it is the regular evening edition of August 6, 1931 and the affidavit of publication on exhibit A is that it is the regular evening edition of June 18, 1931, nothing whatever to show that any letter or statement in either exhibit was written and published by the defendant. There is no evidence to identify exhibit C. This exhibit is called in the record, the original letter written by Mr. Ness to the Fargo Forum, but there is no evidence to show that it is the handwriting of Mr. Ness or that Mr. Ness wrote it. The same is true of the purported copy of a letter claimed to have been written by the plaintiff Ness to Mr. C. M. Wade, tax supervisor. This letter, without any showing, was offered as a copy and without any identification whatever. It undoubtedly would have been a very easy matter to have laid the foundation for the introduction of the purported documentary evidence by producing witnesses to identify Mr. Ness's handwriting to the so-called original letter and there is no showing made why the commission did not require the production of the original letter claimed to have been written by Mr. Ness to Mr. Wade. The commission had authority to require the production of all the papers necessary.

In the case of Rutter v. Burke, 89 Vt. 14, 93 Atl. 842, testimony was taken at great length, but none of the witnesses were sworn. There is this difference between that case and the instant case, viz.: that in that case, witnesses actually gave testimony without being sworn, while in the instant case no witness was examined, either sworn or unsworn. In the former case, the court said at page 849 of 93 Atl. (89 Vt. 14): "A city council is primarily a legislative and administrative body, but is often charged with judicial or quasi judicial functions. When sitting upon charges involving removal for cause, it acts in the latter capacity. But even here, it may be subject to judicial review only in part, and in part be vested with discretionary power. . . . Inquiries involving removal for cause being of a judicial nature,

the person charged is entitled to notice, and an opportunity to be heard, and a reasonable time to prepare his defense. But the proceeding being of a summary character, and designed to accomplish an administrative purpose, a full compliance with the rules governing trials in court is not required. . . . If the charter is silent as to the mode of procedure in such cases, the substantial principles of the common law as to proceedings affecting private rights must be observed. 1 Dill. Mun. Corp. 1st ed. § 253. It is certainly a fundamental rule of the common law that evidence in an adversary proceeding in a court of justice is to be given under the sanction of an oath. A city council engaged in a hearing involving a removal for cause is acting in a judicial capacity, and is to be considered a court for that particular purpose. Re Nichols, 6 Abb. N. C. 474. Although not a court in the strict sense, its duty is so far judicial that it cannot dispense with this prerequisite of a judicial inquiry. People ex rel. Kassachu v. Police Comrs. 155 N. Y. 40, 49 N. E. 257. . . . The petitioners . . . (had) the proceedings of the city council stenographically reported, bringing up by affidavit transcripts of that report, and of the report made of the doings of the investigating committee, to substantiate their claim that there was no legitimate evidence tending to establish a cause for removal. The right of the reviewing court to examine the evidence to determine this question is undeniable." 5 R. C. L. 264; 28 Cyc. 442; note in 12 Am. Dec. 533; Davidson v. Whitehill, 87 Vt. 499, 89 Atl. 1081.

In the case of Garvin v. Chambers, 195 Cal. 212, 232 Pac. 696, it is held that where there is a conflict in the evidence or where the decision of an inferior board or tribunal is sustained by some evidence such decision is not reviewable on certiorari. The power of the civil service board, §§ 81 and 82, Oakland City Charter, being special and limited, no legal presumptions or intendments may be indulged to uphold its order of removal. Facts must appear on the face of the record sufficient to sustain a finding that the petitioner was guilty as charged, otherwise the order of the board sustaining the charge was in excess of the power conferred upon it.

Under a statute very similar to ours, the Minnesota court, in the case of State ex rel. Hart v. Duluth, 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595, speaking through Judge Mitchell said: "The

charter provides that 'any member of said Board (Board of Fire Commissioners) may at any time be removed by a vote of two thirds of all the members elect of the common council of said city for sufficient cause; . . . provided, that the said common council shall previously cause a copy of the charges preferred against such member sought to be removed, and notice of the time and place of hearing the same, to be served on him at least ten days previous to the day so assigned, and opportunity be given him to make his defense personally or by counsel.'" (Practically the same as the North Dakota statute.) Continuing the court said: "It is urged by respondents that the power of removal from office conferred on the common council is purely administrative and quasi political, and therefore that their proceedings cannot be reviewed on certiorari.

"That this power may not be 'judicial,' in the sense that it can only be conferred upon the courts, in whom all judicial power is vested under the constitution, has nothing to do with the question; for there is nothing now better settled than that certiorari will lie to review the quasi judicial acts and proceedings of municipal officers and bodies. Neither is there anything better settled than that while the incumbent has no vested right of property, as against the state, in a public office, yet his right to it has always been recognized by the courts as a privilege entitled to the protection of the law, and that proceedings; in all cases where the amotion from office is for cause, upon notice and hearing, are adversary and judicial in their nature, and may be reviewed on certiorari. We think there is practically no conflict in the authorities on this point, the only difference among them being merely as to what they will review on such a writ. Some courts, restricting the writ to its original common-law office, hold that it brings up for review only the record, and not the evidence, and hence that they will not look into the evidence at all, but merely inspect the record, to see whether the inferior tribunal had jurisdiction, and had not exceeded it, and had proceeded according to law, or, as expressed in one case, whether the tribunal 'had kept within its jurisdiction, or whether the cause assigned was a cause for removal under the statute.' Other courts hold that the evidence may be brought up, not for the purpose of weighing it, to ascertain the preponderance, but merely to ascertain whether there was any evidence at all to sustain the decision of the inferior tribunal,—

whether it furnished any legal and substantial basis for the decision. The latter is the doctrine of this court as to the office of the writ of certiorari. But, while this is so, we recognize the prime importance of each department of government avoiding anything like improper interference with the others in the discharge of their functions; also, that while city councils and other municipal bodies may not have the power to remove from office except for cause, yet, this power being designed to insure efficiency and fidelity in the discharge of official duty; the degree of incompetency and inefficiency which amounts to sufficient cause for removal must of necessity, within certain established limits, rest somewhat in the sound discretion of the officer or body in whom the power of removal is vested. We also recognize the fact that while in the exercise of this power their proceedings are quasi judicial, and hence reviewable by the courts, yet they are not courts, but essentially legislative and administrative bodies; and that their action should be considered in view of their nature and purposes for which they were organized, and not tested by the strict legal rules which prevail in trials in courts of law. Hence, if such body was kept within its jurisdiction, and the evidence furnished any legal and substantial basis for their action, it ought not to be disturbed for any mere informalities or irregularities which might have amounted to reversible error in the proceedings of a court. To apply any other rule to the proceedings of such bodies would be impracticable, and disastrous in the extreme to public interests." See also People ex rel. Hayes v. Waldo, 212 N. Y. 156, 105 N. E. 961; People ex rel. Hogan v. French, 119 N. Y. 493, 23 N. E. 1058.

"Their decisions must, of course, be based upon a consideration of the relevant facts and a fair opportunity must be afforded to present to them such facts as should properly enter into their decisions. Even where an officer may be removed only for 'some' legal cause, to be ascertained and adjudged as matter of fact upon a hearing,' we have said some 'latitude is allowed as to rules of evidence, methods of examination and the like, but no essential of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon review." People ex rel. Hirschberg v. Orange County, 251 N. Y. 156, 167 N. E. 204; Greenbaum v. Bingham, 201 N. Y. 343, 94 N. E. 853.

This is the rule approved by this court in the case of Baker v. Len-

hart, 50 N. D. 30, 195 N. W. 16 and in the case of State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545. In the case of State ex rel. Wehe v. Frazier, supra, the tribunal exceeded its jurisdiction by acting without any evidence and that is the question in the instant case. Is there any evidence at all in this case upon which a judgment of dismissal would be justified? The only evidence offered are records of the city assessor's office for the years 1929, 1930 and 1931, two copies of the Fargo Forum, exhibit C, a letter claimed to have been written by Mr. Ness to the Fargo Forum, exhibit D, a copy of a letter which purports to have been written by Ness to C. B. Wade, exhibit E, journal of the Board of Equalization for the year 1931. After these documents were received in evidence the commission rested its case. Appellant concedes that there was no oral evidence of any kind to identify any of the exhibits or to connect the defendant with them and the record shows that these documents, all the evidence in the case, were received in evidence without connecting the defendant Ness with them in any manner whatsoever. It may be said that the records offered are public records of which the commission might take notice, but so far as the records of assessment and equalization are concerned they do not prove anything of themselves. It is not contended that standing alone they substantiate any of the charges. The charges are based upon the letters claimed to have been written by Mr. Ness to the Fargo Forum and to Mr. Wade and as Mr. Ness is not connected with the letters it follows that there is no evidence upon which the commission could act. Appellant states in his brief that the letters were found in defendant's office, but a brief is no part of the record, and it is well settled that in tribunals of limited jurisdiction it must appear affirmatively upon the record that the tribunal had not only jurisdiction of the person and subject matter but that it also had jurisdiction to render the judgment.

To render a judgment of removal there must be some legal evidence in the record upon which the board can act and in the instant case there is no legal evidence connecting the defendant with any wrongful act and the judgment of removal is void.

There is no merit to respondent's contention that it was necessary to swear the members of the commission to try the case fairly and impartially. The statute makes it the duty of the commissioners to act in such matters and their oath of office is sufficient. Since it appears on the

face of the proceedings that there is no legal evidence in the record authorizing a removal, the judgment and order are affirmed.

BIRDZELL and NUESSLE, JJ., concur.

BURR, J. (dissenting.) It is conceded that the Board of City Commissioners is a tribunal authorized to remove the city assessor for cause; that proper charges were filed; that due and proper notice was given; and that the respondent appeared before the Board at the time and place set for the hearing.

The majority opinion makes no reference to the charges filed, other than to state written charges were served upon the respondent.

The written charges are ten in number—some of them having several sub-divisions. In all they cover nine closely typewritten pages of appellant's brief. Space does not permit setting them forth in full; but among the charges it is stated that respondent had filed a statement with the Tax Supervisor to the effect that the City Commissioners, sitting as a Board of Equalization made no attempt to equalize "different properties on Broadway," but that favoritism and discrimination entered into their act; that while the Board of Equalization was in session the respondent gave out a public interview through the newspapers of the issue of June 18, 1931, to the effect that the Board had thrown his official report into the wastepaper basket and was "passing the buck and making me the goat," that the respondent, in "a statement published in the Fargo Forum," stated that "the increase on Fargo homes by your assessment in 1931 was One Million Dollars, of which $400,000.00 represented new construction, leaving an increase on old homes in the residence district of only $600,000, whereas your own records disclosed that the total increase in the residence district was in excess of one Million Four Hundred Thousand Dollars, so that taking your own figures for new constructions of $400,000, the increase on old residences was not $600,000, but in excess of $1,000,000. That the necessary effect of such misinformation voluntarily published by you, was to create in the public mind the impression that your assessment on old homes was $400,000 less than actually returned by you to the Board of Equalization;" that in the same public statement the respondent had said:

"My records will show that this year I lowered 60% of the homes

in Fargo; 10 per cent were left as they were, and 30% were raised and the principal raises were on homes costing from $6,000.00 to $25,000.-00; " and that these statements were untrue; that, "you (the respondent) have been guilty of inattention to duty and have since May 1, 1931, absented yourself from your office and your official duties for protracted periods without just cause; " that though instructed by the "City Commissioners to give written notice to every individual Tax Payer, whose property assessment was to be increased by you that such property owners might have notice of your action and a reasonable opportunity to be heard . . . you failed in a large number of cases to comply with such instructions. . . . That you did not report your inability to follow such instructions or request additional help to perform such duties and failed without just cause to substantially follow your instructions."

That during the sessions of the board of equalization he had been repeatedly requested to furnish information respecting his reasons for making substantial changes in individual assessments and failed to give any facts, information or reasons. There are many other charges but enough has been cited, to point out the error in the majority opinion, when we refer to the evidence introduced.

A tribunal, with competent jurisdiction, with proper charges served, and the official appearing in person, may not say to the official "proper charges are filed, you are now before us, and therefore you are fired." A hearing must be had and a hearing means the introduction of some testimony unless the official admits the truth of the charges.

At first the respondent made a special appearance and objected to the charges on the ground that they were "vague, indefinite and general in their allegations; " that they alleged no violation of public duties, that they were insufficient as grounds for removal; that they involved merely the right of the assessor as a private citizen to criticize the action of the board and other alleged grounds for quashing the charges. This objection was overruled.

The defendant answered, saying:

"The accused being caused to answer instantly and not having been given an opportunity to prepare a written answer, and being compelled by the Commission to answer instantly, denies the truth of the allegations, each and all, and all the parts thereof."

The majority opinion holds that the board had no evidence presented to it whatever sustaining any of the charges, and hence had no juris-diction to make a decision.

The books and records of the city assessor's office showing the 1929 assessment were offered in evidence, followed by. the introduction in evidence of the records of the city assessor's office for the years 1930 and 1931. The respondent objected to their introduction "for the reason the proof is incompetent, irrelevant, and immaterial; second, it is not within the charges; and third, does not tend to prove the charges." The accused was the city assessor during 1931, and these books and records are public records of his office in his custody. They were the books of this very tribunal sitting as a Board of Equalization. They needed no sworn testimony of witnesses to be introduced, and it is clear from the charges that it was necessary to examine these records to determine the truth of the charges.

In addition a copy of the Fargo Forum of the issue of June 18, 1931, containing the purported statements by Mr. Ness in the alleged interview, was introduced, and a copy of the Fargo Forum of issue of August 6, 1931, and permission was granted to file the affidavit of publication. The objection of the defendant to the issue of August 6 was that "it was not within the charges and objection was made to counsel being allowed to make additional or extra charges for the reason no time was allowed to make the proper reply." What was said to be "the original letter written by Mr. Ness to the Fargo Forum, bearing date August 6, 1931" was also introduced, to which there was the objection that "it was not within the charges, does not prove charges, and no foundation has been laid for proof." The journal of this very Board of City Commissioners, sitting as a Board of Equalization for the year 1931, was introduced in evidence "and the record of the proceedings certified to the county auditor which includes totals for Business and Residence Structures, lots, and the 1931 assessment of property situated on railroad right-of-way under lease." No objection to the introduction of these records was made, and certainly they were records of which this Board could take judicial notice. Among the records in the respondent's office were copies of letters to the Tax Supervisor containing the statements set forth in some of the charges. These were offered in evidence. It is said there was no proof they were copies. The respondent

did not deny they were copies. It is true they were not introduced with the same legal formalities that would be required in the trial of a case in the district court and possibly they were not introduced properly; but with respect to this feature the records that were introduced were certainly competent. The respondent declined to offer any testimony, and contented himself with a general blanket denial of the charges. Otherwise he makes no claim that the alleged interview was not given, nor the letters written as charged.

How can the majority say that there was no evidence introduced? For all we know the truth of the major portion of the charges may be fully substantiated by these records. There is nothing here to show that these records are not sufficient.

It is said these records "do not prove anything of themselves." It is charged the respondent claimed his assessment in 1931 increased the valuation of Fargo homes one million dollars and that six hundred thousand dollars of this was on the old homes. Will not an inspection of the books show whether this is true? How can this court say otherwise?

But if they "do not prove anything" is this not determining the weight to be given to the testimony? Thus the majority is passing upon the sufficiency of the evidence. In Baker v. Lenhart, 50 N. D. 30, 35, 195 N. W. 16, this court has held that this court does not "consider the sufficiency of the evidence or review the findings made by the inferior tribunal except for the sole purpose of determining whether such tribunal has exceeded its jurisdiction." This court held in State ex rel. Wehe v. Frazier, 47 N. D. 314, 321, 182 N. W. 545, that the writ does "not lie to review the sufficiency or the insufficiency of the evidence, or the merely erroneous orders of the Governor, if the Governor acted within his jurisdiction." It is not an excess of jurisdiction to make an erroneous ruling in the admission of evidence, nor to give undue weight to an evidentiary fact.

It is said that in the case of State ex rel. Wehe v. Frazier, supra, the tribunal "exceeded its jurisdiction by acting without any evidence." In that case the tribunal exceeded its jurisdiction by not granting the required hearing.

It is said it must appear from the record the tribunal "had jurisdiction to render its judgment." There can be no controversy on this point, because it must be conceded the board of city commissioners had juris-

diction to remove the respondent on proper showing. The whole tenor of the syllabus concedes this.

It is clear therefore there was evidence before the board, and surely if evidence was produced the decision of the board is final. This Court can not say it was not enough. This is in harmony with the previous holdings of this court. Neither the lower court nor this court can interfere with the decision of the Board. This being so, and the courts being without power to weigh the evidence, the action of the City Commissioners is final, and the judgment of the lower court should be reversed. I am authorized to state Judge Christianson concurs in this dissent.

Burke, J. On re-argument appellant contends that we entirely overlooked § 3793, Compiled Laws, 1913, which provides that "The commissioners shall have control and supervision over all the departments of such city and to that end shall have the power to make all such rules as they may see fit and proper, concerning the organization, management and operation of such departments; and shall have power, under such rules and regulations as they shall make, to appoint, and for cause which to said board shall seem sufficient, and after an opportunity to be heard, to discharge all employees, including the chiefs of the departments respectively."

Section 23, as it appears in the original act adopting the commission system of government for cities, chapter 45, Session Laws of 1907, has never been changed. Section 21 of said chapter 45, Session Laws of 1907 is now § 3791 of the Compiled Laws, 1913, the material part of which reads as follows: "The city commissioners shall by a majority vote of all the commissioners elected under this chapter have the power to appoint all officers and subordinates in all the departments of said city, and to suspend and to discharge the same at will under the limitations hereinafter provided." Part of the limitations are found in § 3793 which provides that the commissioners may, after an opportunity to be heard, dismiss for cause which to said board shall seem sufficient. Section 38 of the original act is an additional limitation, which provides that every person appointed to any office may be removed therefrom by a majority vote of all the members of the board of city commissioners, but no such officer shall be removed except for cause nor unless charges

are preferred against him and an opportunity given him to be heard in his defense.

The board of city commissioners may compel the attendance of witnesses and the production of papers when necessary, for the purpose of such hearing and shall proceed within ten days after such charges are filed with the city auditor to hear and determine the case upon its merits.

In 1911 the city commissioner act was re-enacted and section 38 was amended, making the section apply only to elective officers.

In 1913, § 3808, as amended in 1911, was again amended and restored to its original form, that is § 38, of the original act, applied to persons appointed to office. The amendment of 1911 made it apply only to those who were elected to office and the amendment of 1913 struck out the word "elected" and substituted the word "appointed," so that § 3808 applies now, as it originally did, to every person appointed to office.

Section 3791 gives the commissioners authority to suspend and discharge appointive officers and subordinates under certain limitations. The first limitation is in § 3793 which provides that the commissioners shall have power to appoint and for cause which to said board shall seem sufficient to discharge all employees including chiefs of the departments.

Section 3808 provides that no *such officer* shall be removed except for cause nor unless charges are preferred against him and an opportunity given him to be heard in his defense. The board may compel the attendance of witnesses, the production of papers when necessary for the purpose of such hearing and shall proceed within ten days after such charges are filed to hear and determine the case upon its merits. When these three sections are considered together it is clear that the law contemplates a hearing at which the board may compel the attendance of witnesses and the production of papers.

We do not hold, as appellant claims, that this court has power to review the decision of the board of city commissioners, when based on legal evidence. "Of course, the credibility of the witnesses and the weight to be given to the testimony is within the province of the trying officer or tribunal." 2 McQuillin, Mun. Corp. (2d ed.) § 591, p. 370; People ex rel. Brown v. Greene, 184 N. Y. 565, 76 N. E. 1103; af-

firming 106 App. Div. 230, 94 N. Y. Supp. 477. But we do hold that in order to have jurisdiction to enter a judgment of dismissal there must be a hearing, and some legal evidence upon which the board can act. The record in this case shows that there is no legal evidence, and, therefore, they did not have jurisdiction to enter a judgment of dismissal. State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545; Holliday v. Fields, 210 Ky. 179, 275 S. W. 642; People ex rel. Lenahan v. Griffenhagen, 164 App. Div. 180, 149 N. Y. Supp. 636, approved in 214 N. Y. 652, 108 N. E. 1105.

Not even the charges were sworn to. The statute requires a hearing and a hearing requires the taking of testimony. Under § 7883, Comp. Laws, 1913, "The testimony of witnesses is taken in three modes: 1. By affidavit. 2. By deposition. 3. By oral examination." Under § 7884, Comp. Laws, 1913, "An affidavit is a written declaration under oath" of which only a limited use can be made. Section 7887, Comp. Laws, 1913. Under § 7885, Comp. Laws, 1913, "A deposition is a written declaration under oath made upon notice to the adverse party." Section 7886, Comp. Laws, 1913, defines oral examination and § 7882 Comp. Laws, 1913, prescribes the oath or affirmation that must be administered to each witness before he testifies.

Section 590, 2 McQuillin on Mun. Corp. state: "In the case of a subordinate tribunal, created by statute, such as the civil service commission, it is fundamental that jurisdiction must affirmatively appear on the face of the proceedings and that no presumption will be indulged in favor of it, as in the case of a court of general jurisdiction." Lindblom v. Doherty, 102 Ill. App. 14–24; Petersen v. Civil Service Bd. 67 Cal. App. 70, 227 Pac. 238, 242; Funkhouser v. Coffin, 221 Ill. App. 14.

The record shows that no witnesses were sworn and that no testimony was given under oath. Not even the charges were sworn to and appellant admits, in his re-argument, that no witnesses were sworn, but claims that it was not necessary to swear any witnesses, that the records that were offered in evidence were made by the defendant and testimony of identification was not necessary.

As pointed out in the opinion, the records do not prove anything in themselves and in our opinion it was necessary to connect the defendant with the letters claimed to have been written by him with legal evidence.

"While strict conformity to legal rules as to evidence is not required, there should be no disregard of fundamentals. The evidence should be given under the sanction of an oath. As aptly said: 'Although not a court in the strict sense, its duty is so far judicial that it cannot dispense with this prerequisite of a judicial inquiry.'" 2 McQuillin, Mun. Corp. 2d ed. § 590.

A proceeding before commissioners at which no witnesses were sworn, and the accused merely appeared and made an unsworn statement in his own behalf and answered questions put by two of the commissioners, was held not a hearing under the statutes. People ex rel. Ryan v. Wells, 86 App. Div. 270, 83 N. Y. Supp. 789; McQuillin, Mun. Corp. supra.

"The removing officer has considerable discretion, but it is not unlimited; it is to be directed by the law and the evidence. Members of a tribunal cannot act capriciously or arbitrarily." 2 McQuillin, Mun. Corp. § 591; People ex rel. Hayes v. Waldo, 212 N. Y. 156, 167, 105 N. E. 965; Medford v. Judge of First Dist. Ct. 249 Mass. 465, 144 N. E. 397; Eisle v. Woodin, 205 App. Div. 452, 199 N. Y. Supp. 559.

The defendant did not have a hearing as contemplated by statute and we adhere to our former decision.

BIRDZELL and NUESSLE, JJ., concur.

BURR, J. and CHRISTIANSON, Ch. J. We adhere to the views expressed in the dissenting opinion by Mr. Justice Burr. The writ of certiorari lies only in case the city commissioners have acted without or in excess of jurisdiction. The writ does not lie to review the sufficiency or insufficiency of evidence or errors in procedure. The record in this case, in our opinion, wholly fails to show any action without or in excess of jurisdiction.

The statutes authorizing the city commissioners to remove an officer vests them with wide discretionary powers. Comp. Laws, 1913, §§ 3791, 3793 and 3808. See also Boyd v. Pendegast, 57 Cal. App. 504, 508, 207 Pac. 713; Gallagher v. Armstrong, 3 Alberta L. R. 443; State ex rel. Moore v. Archibald, 5 N. D. 359, 379–381, 66 N. W. 234. While such officer can be removed only for cause and after notice and opportunity to be heard in his defense, the power of removal is to be exercised "under such rules and regulations as they (the Board of City

Commissioners) shall make ⁝ . . and for cause which to said board shall seem sufficient." Comp. Laws 1913, § 3793.