Gerald RUDNICK, Plaintiff, Appellant
and Cross–Appellee,

v.

CITY OF JAMESTOWN and the James-
town Police Department, Defendants,
Appellees and Cross–Appellants.

Civ. No. 900027.

Supreme Court of North Dakota.

Nov. 29, 1990.

Robert W. Martin (argued) and James A. Wright (argued), of Weiss, Wright, Paulson & Merrick, Jamestown, for plaintiff, appellant, and cross-appellee.

Joseph F. Larson II (argued), Asst. City Atty., Jamestown, for defendants, appellees, and cross-appellants.

ERICKSTAD, Chief Justice.

Gerald Rudnick appeals from an amended judgment denying his request to enjoin the defendants, the City of Jamestown and the Jamestown Police Department, from demoting him from sergeant to corporal. The defendants cross-appeal from the court's determination that it had jurisdiction over Rudnick's independent action to challenge the constitutionality of the demotion procedure. We affirm.

Rudnick has been continuously employed by the Jamestown Police Department since 1966, and he held the rank of sergeant from 1973 until he was demoted to corporal in the proceedings that precipitated this action. On March 30, 1987, Officer Kevin Gebhardt submitted a report to the Chief of Police, Thomas Jensen, alleging that, on February 28, 1987, Rudnick left his post as shift commander for about one hour to move snow for his snow-removal business and that Rudnick's conduct constituted neglect of duty in violation of Section 3.11 of the Jamestown Police Department's Rules on Conduct and Performance.[1] On March 31, 1987, Rudnick was notified of the allegations by his supervisor, Lieutenant Lanny Bell.

Chief Jensen appointed Detective Ardel Wolff to investigate the allegations. After conducting an investigation, Wolff filed a written report stating "that Sgt. Rudnick did flagrantly neglect his duty when he abandoned his assigned duties as a police officer to operate his snow removal equipment, which is a business that should be conducted only on his own time." Wolff recommended that the incident be placed on the agenda of the Discipline Review Board for the Jamestown Police Department.

Rudnick received a copy of Wolff's report and filed a written response with Chief Jensen:

"When Lt. Bell informed me of the complaint issued March 30, 1987 of an incident occurring February 28, 1987, I told

---

**1.** Section 3.11, Jamestown Police Department Rules on Conduct and Performance, provides:

"3.11 Neglect of Duty

"A member shall not read, play games, watch television or movies, or otherwise engage in entertainment while on duty, except as may be required in the performance of duty. He shall not engage in any activity or personal business which would cause him to neglect or be inattentive to duty."

him it was true that I had taken a porta-
ble radio and left in my personal vehicle
for approximately 30–45 minutes. I also
stated to him that it would never happen
again. I also stated that I still had 4
holiday hours coming and I would just
forfeit those hours for the time that I
used. I also said that I could always say
'I was on my lunch break.' I was always
in uniform and never lost radio contact
with the communication center. In the
past, other officers have used their lunch
break for varying reasons, such as leav-
ing work a half hour to an hour early, or
for other personal business. I had no
idea as shift commander I had to first
okay my actions with a patrolman. Who
is a patrolman to question a supervisor?"

Ed Steckler, the Assistant Chief of Police
and chairman of the Discipline Review
Board for the Jamestown Police Depart-
ment, notified Rudnick that the Board
would conduct a hearing on June 17, 1987,
to consider the allegations of misconduct
against Rudnick. The Board consisted of
Steckler, Lt. Gary Peterson, Lt. Lanny
Bell, Sgt. Leonard Palmer, and Officer
David Carpenter. Rudnick appeared at the
hearing before the Discipline Review Board
and explained his conduct:

"Asst. Chief: The first one we can skip,
let's go over to neglect of duty, you state
in there that you have 4 holiday hours.
"Sgt. Rudnick: That's the four unofficial
holiday hours.
"Asst. Chief: The only thing is that has
to be approved before it can be taken.
"Sgt. Rudnick: Not if you are the shift
commander.
"Off. Carpenter: There is some discrep-
ancy as to whether you were in uniform
or not.
"Sgt. Rudnick: Full uniform, except for
jacket and I had my uniform jacket be-
side me in the truck.
"Lt. Bell: Did you move snow any other
place?

"Sgt. Rudnick: Only sidewalks that I
had to have done before I got off work
and we were short all that time so I
could not get off in any way, shape or
form.
"Asst. Chief: How long were you there?
"Sgt. Rudnick: About 45 minutes.
"Asst. Chief: Have you done this before?
"Sgt. Rudnick: Never.
"Lt. Bell: Did you try to get someone
else to help you?
"Sgt. Rudnick: No.
"Lt. Peterson: What do you mean you
didn't have to OK it with a patrolman
before you took off?
"Sgt. Rudnick: I felt I did not have to
ask him. The only excuse I have is that
over the years other people have done
the same things, either left early or come
late.
"Asst. Chief: You were saving those
four hours to use at your convenience?
"Sgt. Rudnick: More or less."

The Board found that the allegations
against Rudnick had been established and
recommended that he be demoted from ser-
geant to corporal with a corresponding pay
reduction. By letter dated June 25, 1987,
Rudnick was notified that Chief Jensen and
Mayor James Lusk concurred in the
Board's findings and recommendation; that
the demotion was effective July 1, 1987;
and that he could appeal to the Jamestown
Civil Service Commission within five days.

Rudnick appealed to the Civil Service
Commission and a hearing was held on July
22, 1987, before the Commission's duly-ap-
pointed members, Keith Prentice, William
Guthmiller, and Ken Wick. Rudnick and
his attorney were present at the hearing.
The Commission found that Rudnick had
violated Section 3.11 by leaving his post to
perform snow removal operations for his
personal business and confirmed Rudnick's
demotion from sergeant to corporal, effec-
tive July 1, 1987.[2]

---

**2.** Rudnick was also disciplined for a gesture to
the Jamestown municipal judge during a court
proceeding and for comments about an assist-
ant state's attorney to another police officer.
He received a written reprimand for the com-
ments about the assistant state's attorney and a

fifteen-day suspension without pay for the ges-
ture to the municipal judge. That conduct had
been investigated by Detective Wolff and was
part of the hearing before the Discipline Review
Board as well as the Civil Service Commission.
During oral argument to this court, Rudnick's

Rudnick then commenced this independent action in district court, alleging that the defendants violated his due process rights, the Police Department's Policy and Procedure Manual, and the Police Department's Rules on Conduct and Performance. Rudnick sought to permanently enjoin the defendants from demoting him from sergeant to corporal and from filling his position as sergeant. The defendants answered, contending that the district court lacked jurisdiction to hear the action and that a writ of mandamus should have been sought because no appeal from the decision of the Civil Service Commission was authorized by law. The defendants also contended that Rudnick was not deprived of a property or liberty interest and therefore was not entitled to due process or, alternatively, that he received due process.

The district court concluded that it had jurisdiction to resolve the alleged violations of Rudnick's due process rights. The court concluded that its scope of judicial review was the same as any civil trial because courts are the final interpreters of the constitution. Finally, the court determined that the procedures before the Discipline Review Board and the Civil Service Commission did not deny Rudnick due process.

In their cross-appeal, the defendants contend that the district court did not have jurisdiction to entertain Rudnick's indepen-

counsel limited the issues on this appeal to the demotion for neglect of duty.

3. Section 103, N.D. Const., was the predecessor of Art. VI, § 8, and provided that "district courts shall have original jurisdiction, except as otherwise provided in this constitution, of all causes both at law and equity, and such appellate jurisdiction as may be conferred by law." Under Section 103, we said that the jurisdiction of the district court is embodied in the constitution and may not be limited or restricted by the Legislature. *Bryan v. Miller*, 73 N.D. 487, 16 N.W.2d 275 (1944).

4. Section 27-05-06, N.D.C.C., provides:
"*27-05-06. Jurisdiction of district courts.* The district courts of this state have the general jurisdiction conferred upon them by the constitution, and in the exercise of such jurisdiction they have power to issue all writs, process, and commissions provided therein or by law or which may be necessary for the due execution of the powers with which they are vested. Such courts shall have:

dent action. The defendants characterize this action as an attempted appeal and argue that there is no statutory authority for an appeal to the district court from a decision of the Civil Service Commission. They assert that Rudnick's remedy was to seek a writ of mandamus under ch. 32-34, N.D. C.C.

Rudnick responds that this action was not an appeal but was an independent action and was within the original jurisdiction of the district court under Article VI, § 8, N.D. Const. He asserts that the district court correctly determined that it had jurisdiction to determine the alleged violations of his due process rights.

■ Jurisdiction is the power of a court to hear and determine a cause of action. *Zent v. Zent*, 281 N.W.2d 41 (N.D.1979). The constitution is the ultimate source of the judicial power of courts. *Schillerstrom v. Schillerstrom*, 75 N.D. 667, 32 N.W.2d 106 (1948). Art VI, § 8, N.D. Const., gives a district court two distinct classes of jurisdiction: (1) original jurisdiction of all causes, except as otherwise provided by law, and (2) appellate jurisdiction as may be provided by law or by rule of the supreme court.[3] *See Bryan v. Miller*, 73 N.D. 487, 16 N.W.2d 275 (1944). Section 27-05-06, N.D.C.C.,[4] also defines a district court's jurisdiction.

"1. Common-law jurisdiction and authority within their respective judicial districts for the redress of all wrongs committed against the laws of this state affecting persons or property.
"2. Power to hear and determine all civil actions and proceedings.
"3. All the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carrying into effect their judgments, orders, and other determinations, subject to a reexamination by the supreme court as provided by law.
"4. Jurisdiction of appeals from all final judgments of municipal judges and from the determinations of inferior officers, boards, or tribunals, in such cases and pursuant to such regulations as may be prescribed by law.
"5. Jurisdiction over actions by game and fish officials involving the confiscation of materials determined to be in excess of one thousand dollars in value."

■ Initially, we disagree with the defendants' characterization of this action as an appeal. Appellate jurisdiction is the power of a superior court to review and revise a decision that has been rendered by an inferior court or tribunal. *Bryan v. Miller, supra.* A district court does not have appellate jurisdiction unless authorized by statute. *Investment Rarities, Inc. v. Bottineau County Water Resource District,* 396 N.W.2d 746 (N.D.1986). In *Investment Rarities, supra,* we affirmed a district court's dismissal of an attempted appeal from a decision by the North Dakota State Engineer because there was no statutory authorization for that appeal.

Pursuant to Section 40–44–01, N.D.C.C.,[5] the Jamestown City Council enacted Jamestown City Ordinance ch. 11, which adopts a Civil Service System for employees of the City of Jamestown and creates a Civil Service Commission. As a full-time employee of the police department, Rudnick was a classified employee under the Jamestown Civil Service System. Section 40–44–08, N.D.C.C.;[6] Section 11–3, Jamestown City Ordinance.[7] However, ch. 40–44, N.D.C.C., does not include statutory authorization for an appeal from a decision of a municipal Civil Service Commission and the parties have not called our attention to any other statutory provision authorizing an appeal. *Compare Domek v. North Dakota State Personnel Board,* 430 N.W.2d 339 (N.D. 1988); *Choukalos v. North Dakota State Personnel Board,* 429 N.W.2d 441 (N.D. 1988). Rudnick's action therefore is not an appeal.

■ The constitutional grant of original jurisdiction to the district court creates a court of general jurisdiction with the power to determine all controversies which can possibly be made the subject matter of a civil action. *Zent v. Zent, supra; Bryan v. Miller, supra.* A basic principle of our tripartite system of constitutional government is that the judicial branch construes and passes on the constitutionality of the law, and determines the rights and interests of individual citizens. *Verry v. Trenbeath,* 148 N.W.2d 567 (N.D.1967). Whether or not constitutional guarantees are violated is a question for the courts. *Id.*

■ In *Kristensen v. Strinden,* 343 N.W.2d 67 (N.D.1983), this court held that our state courts have concurrent jurisdiction with federal courts to entertain actions brought under 42 U.S.C. § 1983[8] for the

---

5. Section 40–44–01, N.D.C.C., provides:
   *"Cities of certain population may adopt civil service system.* The governing body of any city having a population of more than four thousand inhabitants according to the latest official federal or state census may adopt, by ordinance, a civil service system for the selection, employment, classification, advancement, suspension, retirement, or discharge of appointive officials or employees of the city."

6. Section 40–44–08, N.D.C.C., provides:
   *Ordinance creating civil service system—What to be included—Departments automatically included.* In any ordinance creating a civil service system, the governing body shall designate the departments, classes of employees, and the appointive officials of the city who shall come under the system, and it subsequently may add thereto. All full-time paid employees of the fire and police departments, with the chiefs thereof, shall be placed under any civil service system adopted whether they are designated in the ordinance or not."

7. Section 11–3, Jamestown City Ordinance, provides:
   "All offices and positions of the city are divided into the classified service and the exempt service.

"The exempt service shall include the following:
   "(a) All elected officials;
   "(b) All persons appointed to boards or commissions;
   "(c) Volunteer personnel and personnel appointed to serve without pay;
   "(d) Consultants and counsel rendering temporary professional services;
   "(e) Persons engaged in seasonal or part time employment to include provisional employees;
   "(f) All appointive officers as permitted under the statutes of North Dakota, to include the personnel director;
   "(g) Deputies or assistants serving under an appointive officer.
   "The classified service shall include all other positions in the city service that are not specifically placed in the exempt service by this chapter or subsequent amendments thereto. (Ord. No. 866 (part).)"

8. 42 U.S.C. § 1983 provides:
   "*§ 1983. Civil action for deprivation of rights*
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

deprivation of constitutional rights. Public employees with a protected property or liberty interest in their employment may maintain a § 1983 action against a political subdivision if that interest is deprived without due process of law. Perritt, *Employee Dismissal Law and Practice,* § 6.9 (1987). Injunctive relief in the form of reinstatement may be a proper remedy for a § 1983 violation. *See Peery v. Brakke,* 826 F.2d 740 (8th Cir.1987).

■ Although Rudnick's complaint does not specifically cite § 1983, it alleges that he was deprived of due process in violation of the United States and North Dakota Constitution and seeks the equitable remedy of an injunction. Pleadings shall be construed to do substantial justice. Rule 8(f), N.D.R.Civ.P. The defendants cannot seriously argue that the alleged deprivation of due process guarantees is not a controversy which can possibly be made the subject matter of a civil action where, as here, there is no statutory right to appeal.

Moreover, we are not persuaded that Rudnick's sole remedy was to seek a writ of mandamus. We note that some proceedings involving the termination of municipal employees have been by mandamus seeking reinstatement [*Lee v. Walstad,* 368 N.W.2d 542 (N.D.1985); *Blomquist v. Clague,* 290 N.W.2d 235 (N.D.1980) ], and that we have treated an action seeking an injunction to reinstate a police officer to the civil service rolls "brought in the form of an ordinary civil action" as a mandamus proceeding. *Holcomb v. Hamm,* 77 N.D. 154, 157, 42 N.W.2d 70, 71 (1950). Certiorari has also been used to challenge the removal of a city officer. *State ex rel. Ness v. Board of City Commissioners of City of Fargo,* 63 N.D. 33, 245 N.W. 887 (1932). However, we also recognize that some proceedings involving the termination of municipal employees and alleging a deprivation of due process have been brought as independent actions. *Mattheis v. City of Hazen,* 421 N.W.2d 476 (N.D.1988); *Hennum v. City of Medina,* 402 N.W.2d 327 (N.D.1987). In *Mattheis, supra,* 421 N.W.2d at 479, we cited *State ex rel. Ness, supra,* and stated that removal proceedings are reviewable by courts to determine whether the removing authority was within its jurisdiction and the evidence furnished any legal and substantial basis for its action.

In a related area involving school board nonrenewal of teacher employment contracts for which there is no statutory appeal from the decision of the school board, we have permitted teachers to challenge a school board's decision to nonrenew by mandamus to compel reinstatement. *E.g., Feldhusen v. Beach Public School Dist. No. 3,* 423 N.W.2d 155 (N.D.1988). However, we have also allowed teachers to proceed by independent action to review a nonrenewal decision to determine if the procedural steps required by statute were followed and, if under the facts of the case, a nonrenewal was authorized. *Dobervich v. Central Cass Public School District No. 17,* 283 N.W.2d 187 (N.D.1979), *appeal after remand* 302 N.W.2d 745 (N.D.1981). However, in *Dobervich, supra,* 302 N.W.2d at 751–752, we limited the court's review of nonrenewal decisions:

"[W]e conclude that, except for procedural matters, the trial court's review of the reasons given for nonrenewal of the teacher's contract and the evidence submitted at the hearing pertaining thereto is limited to: (1) determining whether or not the reasons given are in accordance with the statutory provisions, i.e., they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient— whether or not under the facts of the

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

case the school board has abused its discretion in reaching the nonrenewal decision. Such a review will, in our estimation, permit the teacher his day in court and, at the same time, will not unduly involve the courts in the administration of the school system." [9]

■ Those cases illustrate that, in some circumstances, procedures other than mandamus have been used to challenge employment decisions. Whether we denominate this as an independent action or as an application for mandamus or certiorari, we conclude that Rudnick's action is within the district court's jurisdiction. *See Mattheis v. City of Hazen, supra; Hennum v. City of Medina, supra; cf. Dobervich v. Central Cass Public School District, supra.* We further conclude that, within the context of that action, whether or not the defendants' disciplinary procedures complied with due process is fully reviewable [*see Verry v. Trenbeath, supra*]; however, the substantive merits of the disciplinary action are subject to limited review with deference to the disciplinary authority. *Mattheis v. City of Hazen, supra; State ex rel. Ness, supra; see* 4 McQuillin, Municipal Corporations, § 12.266; *cf. Dobervich, supra.* We believe that a limited review will permit municipal employees to have their day in court without unduly involving the courts in the merits of disciplinary decisions. We follow the standard of review stated in *Mattheis* and *State ex rel. Ness* which limits a court's review to whether the evidence furnished any legal and substantial basis for the disciplinary action. [10]

We thus turn to Rudnick's assertion that he was deprived of procedural due process during the disciplinary proceedings.

■ Rudnick's due process claim depends on whether or not he had a constitutionally protected property interest in retaining his rank as sergeant. If he does, the defendants cannot deprive him of that interest without due process. *Hennum v. City of Medina, supra; Lee v. Walstad, supra.* Property interests are not created by the constitution, rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law. *Lee v. Walstad, supra.* In this case, we need not decide if Rudnick has a protected property interest because, assuming arguendo that he does, we conclude that he received due process.

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–504 (1985), the United States Supreme Court outlined the contours of procedural due process in a context similar to this:

> "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' ... We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' ... This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." [Footnote and citations omitted.]

In *Loudermill,* the Court held that the due process clause requires that before an employee with a protected property interest may be terminated, the employee must have pretermination notice and an opportunity to respond. The Court outlined the nature of the pretermination hearing:

9. *Dobervich* was based upon Section 15–47–38(5), N.D.C.C., which was amended in 1983. In *Belcourt v. Fort Totten Public School District,* 454 N.W.2d 703 (N.D.1990), we said that the 1983 amendment did not overrule *Dobervich* and that the abuse-of-discretion standard remains applicable to review of nonrenewal of teachers' contracts.

10. Although the trial court determined that its review was the same as for any civil action, we do not reverse a proper judgment merely because the trial court's reasoning in arriving at the judgment was incorrect if the results are the same under applicable reasons. *E.g., Wolf v. Anderson,* 422 N.W.2d 400 (N.D.1988). In this case, the trial court did not give any deference to the disciplinary authority's decision and determined that Rudnick's demotion was proper. That result is the same under the deferential scope of review which we adopt.

"The foregoing considerations indicate that the pretermination 'hearing,' though necessary, need not be elaborate. We have pointed out that '[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' ... In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action.... Under state law, respondents were later entitled to a full administrative hearing and judicial review. The only question is what steps were required before the termination took effect.

\* \* \* \* \* \*

"Here, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action....

"The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." [Citations omitted.] *Loudermill, supra,* 470 U.S. at 545–546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506.

Rudnick was given written notice of the charges against him before he was demoted. Detective Wolff conducted an investigation of Rudnick's alleged misconduct and submitted a written report. Rudnick received a copy of Wolff's report and filed a written response with Chief Jensen on June 11, 1987. Rudnick was then given a pre-demotion hearing before the Discipline Review Board on June 17, 1987. Evidence was presented to support the allegations against Rudnick, and he appeared before the Board to explain his conduct. The Board found that the allegations against Rudnick had been established and recommended that he be demoted from sergeant to corporal with a corresponding pay reduction. Rudnick was further notified by letter dated June 25, 1987, that Chief Jensen and Mayor James Lusk concurred in the Board's findings and recommendation; that the demotion was effective July 1, 1987; and that he could appeal to the Jamestown Civil Service Commission. Rudnick thereafter appealed to the Civil Service Commission and received a post-demotion hearing on July 22, 1987. We believe the pre-demotion procedures and subsequent hearing before the Civil Service Commission accorded Rudnick greater protections than the due process requirements of *Loudermill.* We are not persuaded that he was constitutionally entitled to any greater due process protections.

Rudnick nevertheless contends that he was denied procedural due process because his supervisor, Lt. Bell, testified in the disciplinary proceedings and was also a member of the five-person Police Discipline Review Board which conducted the pre-demotion hearing. We disagree with Rudnick's contention because, as we have previously noted, a pre-disciplinary proceeding need not be elaborate. *Loudermill, supra.* In *Berdahl v. North Dakota State Personnel Board,* 447 N.W.2d 300 (N.D.1989), we said that due process does not require that the State provide an impartial decisionmaker at the pretermination hearing. *See also First American Bank & Trust Co. v. Ellwein,* 221 N.W.2d 509 (N.D.), *cert. denied* 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974).

Moreover, in *Mattheis v. City of Hazen,* 421 N.W.2d 476 (N.D.1988), we dealt with an allegation of bias and prejudice against a member of the Hazen City Commission who signed a statement of charges against a city employee and later sat on the City

Commission's deliberations which culminated in the termination of the employee. *See also Domek v. North Dakota State Personnel Board*, 430 N.W.2d 339 (N.D.1988). We relied upon *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), and quoted with approval from *State ex rel. DeLuca v. Common Council of Franklin*, 72 Wis.2d 672, 681, 242 N.W.2d 689, 695 (1976):

> " 'Circumstances which lead to a high probability of bias, even though no actual bias is revealed in the record, may be sufficient to give the proceedings an unacceptable constitutional taint. *Larkin* indicated that there were two situations that clearly show such a high probability of actual bias as to be constitutionally intolerable, the first being a situation in which the adjudicator has a pecuniary interest in the outcome and the second where the adjudicator has been the target of personal abuse or criticism from the party before him.' " *Mattheis, supra*, 421 N.W.2d at 480.

We agree with the district court's assessment that "[t]here is nothing in the proceeding ... which has been produced by [Rudnick] to establish that Lieutenant Bell was in any way biased against Sergeant Rudnick."

■ Rudnick also asserts he was deprived of procedural due process because the Jamestown Municipal Code had no provision for formal rules before the Civil Service Commission governing the admission of evidence or the conduct of the hearing.[11] He asserts that he did not receive a fair hearing.

In *Mattheis v. City of Hazen, supra*, we recognized that removal proceedings are not governed by the strict legal rules which prevail in trials in courts of law. At the civil service hearing, Rudnick was advised that he could call or cross-examine any witness, and that the hearing could be continued to allow an opportunity to fully resolve the matter. The transcript of that hearing reflects that Rudnick was not de-nied the opportunity to present whatever evidence he deemed appropriate. We are not persuaded that he was denied procedural due process in this respect.

Finally, Rudnick asserts that his substantive due process rights were violated in the course of the administrative proceedings. Rudnick's argument involves the substantive merits of the decision to demote him. He essentially argues that he should not have been demoted because, as shift commander on the day of the snow removal incident, he was authorized to permit the use of unofficial holiday time. He further asserts that he was singled out for selective discipline.

■ Generally, a substantive due process entitlement precludes the government from taking action that is wholly unrelated to legitimate public interests. *Beller v. Middendorf*, 632 F.2d 788 (9th Cir.1980), *cert. denied* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *Major v. Hampton*, 413 F.Supp. 66 (E.D.La.1976). *See generally* Perritt, *Employee Dismissal Law and Practice*, § 6.13.

■ The Jamestown Police Department's Rules on Conduct and Performance require shift commanders to regulate their command so that at all times when they are absent, the shift shall be under the command of a competent officer. There was evidence that Rudnick left his duties as shift commander to engage in personal business. Although Rudnick argues that, as shift commander, he was authorized to permit the use of unofficial holiday time, there was evidence that, when he left, the shift was short-handed and that he did not notify or leave another person in charge. Rudnick's conduct was detrimental to the efficient operation of the police department. There can be no doubt that an efficient police department is a legitimate public interest and that disobedience of the department's rules undermines and weakens the entire structure of the organiza-

---

11. We note that Section 11–23(b) of the Jamestown Municipal Code governs the Civil Service appeal and provides, in part, that "[t]he employee, his representative, and the department su-pervisor shall have the right to be heard publicly and to present evidence" and that "[a]t the hearing technical rules of evidence shall not apply."

tion. We cannot say that discipline for neglect of duty by a shift commander is wholly unrelated to legitimate public interests or that the evidence did not furnish any legal and substantial basis for the discipline imposed in this case.

 Neither can we say that Rudnick was a victim of selective discipline. Just as the failure of a state's attorney to prosecute other offenders, in the absence of intentional discrimination, does not constitute a denial of equal protection, we cannot say that, in the absence of intentional discrimination, the Jamestown Police Department's failure to discipline other officers denies Rudnick substantive due process rights. *See Best Products Co., Inc. v. Spaeth*, 461 N.W.2d 91 (N.D.1990). We discern no such conduct here.

The district court judgment is affirmed.

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.