[Civ. No. 43366. Second Dist., Div. Five. Dec. 6, 1974.]

PATRICK M. REYNOLDS, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Kurlander, Solomon & Hart, Kurlander & Hart and Ronald L. Gould for Plaintiff and Appellant.

Burt Pines, City Attorney, Lawrence L. Hoffman, Assistant City Attorney, and James T. Adams, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**KAUS, P. J.**—Mandate. Petitioner Patrick M. Reynolds appeals from a summary judgment in favor of various City of Los Angeles respondents.[1]

The facts are stated in accordance with the rules governing review of summary judgment. (See *Corwin* v. *Los Angeles Newspaper Service Bureau,*

---

[1]City of Los Angeles; Edward M. Davis, Chief of the Los Angeles Police Department; board of civil service commissioners; board of police commissioners, and John Salvino, a police officer.

*Inc.,* 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953].) Thus, we must accept much that petitioner may find very hard to prove.

Petitioner was a Los Angeles police officer. On about February 18, 1972, he was served with a complaint by the police department alleging 14 counts of dereliction of duty; he was suspended from duty. He was informed of his right to a "Board of Rights" hearing[2] and to be represented at the hearing by a member of the police department.

Lieutenant John Salvino—a respondent—(*ante,* fn. 1) agreed to act as petitioner's representative. Salvino informed petitioner that another charge, failing to qualify at the rifle range, was to be added to the complaint. Petitioner first told Salvino he had qualified, then he remembered and admitted he had not qualified. Salvino told petitioner that he had been asked to investigate this charge and would be required to testify at the hearing that petitioner had lied about qualifying. He said that the department would probably add a general unfitness charge against petitioner and that Salvino would also be required to testify against him about that charge. Salvino advised petitioner to resign.

On about February 27, petitioner informed Salvino that he wished to continue with his board of rights hearing. Salvino said that even though no general unfitness charge had been added to the complaint, petitioner's whole defense would be "ruined" if Salvino was forced to testify against him.

Based upon Salvino's advice and Salvino's statement that if petitioner resigned he would be able to get a job with another police department, petitioner resigned on February 29, 1972. The reasons given were "personal family reasons." Although Salvino told petitioner that no additions would be made to the resignation form petitioner's commanding officer did add adverse comments.

Salvino's statement that he would be required to testify against petitioner was false, because Salvino, as petitioner's representative, owed him a fiduciary duty. Salvino's statements about the resignation form and about petitioner's chances of getting a job with another police department were false. Petitioner resigned in reliance on Salvino's representations.

Petitioner did not learn that Salvino's advice was false until July and August 1972, when he consulted an attorney. On September 27, 1972—

---

[2]The procedures for suspension and dismissal are governed by section 202 of the Los Angeles City Charter.

about seven months after petitioner resigned—his attorney wrote a letter to the board of civil service commissioners.

The six-page letter started with a statement that petitioner had resigned on February 29, and that "he now petitions this Commission for leave to withdraw his resignation. In so doing, he understands that, . . . he still must face disciplinary proceedings against him prior to reinstatement." After stating the facts and discussing the law, the letter concluded with a statement that "it is urged that Patrick M. Reynolds be permitted to withdraw his resignation. He therefore requests that this Board grant him a hearing. . . ."

The same letter, dated two days later, was sent to the chief of police and to the board of police commissioners. None of the letters contained any demand for salary.

Petitioner's request was rejected in November and December 1972 by the city attorney, the chief of police and the board of police commissioners. This action was filed in January 1973. Petitioner asked for an order allowing him to "rescind his resignation" and for "back compensation from September 27, 1972," the date of his attorney's letter to the civil service commission.

Respondents based their motion for summary judgment on the complaint and letter exhibits, declarations from the board of civil service commissioners' office that it had no record of a demand for reinstatement from plaintiff and from the city clerk's office that it had no record of a claim for compensation from plaintiff. Petitioner's declarations elaborated on the facts stated above.

### DISCUSSION

■ The only issue[3] before this court is whether petitioner's failure to file a demand for reinstatement and a claim for salary within 90 days after his resignation bars him from seeking any relief in court.

At this point, we note that petitioner admits he did not file any claim for salary. However, although respondents assert that petitioner did "not allege

---

[3]Respondents filed no declarations concerning Salvino's conduct or statements. No argument was made concerning whether, if fraud was committed, petitioner was on notice no later than the unspecified "subsequent time" that adverse comments had been added to petitioner's resignation. The judgment recites that "Section 112½"—discussed in detail below—"of the Charter of the City of Los Angeles, and respondents, therefore, have an absolute defense to or against said petition, there being no triable issue of fact presented."

or plead" that he filed a demand for reinstatement and that respondents' declarations "definitively show" that he did not file such a demand, it is difficult to construe petitioner's letter of September 27, 1972, as anything but a demand for reinstatement. At a minimum, under the rules governing summary judgment, the letter of September 27 and respondents' declarations create a factual conflict which we must resolve in favor of petitioner at this point.

The core of this case is section 112½ of the Los Angeles City Charter which provides, in full: "Whenever it is claimed by any person that he has been unlawfully suspended, laid off or discharged, and that such lay-off, suspension or discharge is ineffective for any reason, *any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged.* Such demand for reinstatement must be filed with the Board of Civil Service Commissioners and such claim for ·compensation for such allegedly wrongful, illegal or erroneous discharge must be filed with the City Clerk. *Failure to file such demand for reinstatement within the time herein specified shall be a bar to any action to compel such reinstatement* and proof of filing such a demand for reinstatement must be completed and proved a condition precedent to the maintenance of· any action for reinstatement. *Proof of filing the claim for compensation within the time and in the manner herein specified shall be a condition precedent to any recovery of wages or salary claimed* to be due on account of said lay-off, suspension or discharge. Except as herein specified, such claims for compensation shall conform to the requirements of Sections 363, 369 and 376 of this charter. [Added, 1937.]" (Italics added.)

The procedural requirements of section 112½ apply to a coerced or involuntary resignation. (*City of Los Angeles* v. *Superior Court* (*Burns*) 8 Cal.3d 723, 729-730 [106 Cal.Rptr. 15, 505 P.2d 207]; *Moreno* v. *Cairns,* 20 Cal.2d 531, 534-535 [127 P.2d 914]; *Varela* v. *Board of Police Commissioners,* 107 Cal.App.2d 816, 818, 820 [238 P.2d 62]; *Temple* v. *Horrall,* 92 Cal.App.2d 177, 179 [206· P.2d 909].)

Petitioner, recognizing this apparent obstacle, argues, first, that section 112½ does not apply in this case, and second, if it does, that where the resignation is involuntary because induced by fraud, the 90-day filing period specified in section 112½ runs from the date that the fraud is discovered. The first argument is without merit; the second is good.

We can briefly dispose of petitioner's contention that section 112½ does not apply at all. He points out that the section refers to a "demand for reinstatement" and that he asked only to be placed back on the suspended list pending a hearing. The argument is specious; what petitioner wanted was to be allowed back on the police force, and the reasons for requiring a written demand or claim (see *Bacich* v. *Board of Control,* 23 Cal.2d 343, 347 [144 P.2d 818]) apply whether petitioner demands immediate reinstatement or reinstatement deferred only until a hearing can be held.[4]

Petitioner also contends that since the proceedings to fire him were invoked under City Charter section 202, it follows that, even though he quit, he was entitled to the benefit of the three-year rehearing time period in section 202 (16.) He is mistaken. (*City of Los Angeles* v. *Superior Court (Burns) supra,* 8 Cal.3d 723, 730-731, approving *Temple* v. *Horall, supra,* 92 Cal.App.2d 177, 179-180, holding that section 202 does not apply to an involuntary resignation.) Section 112½ is inapplicable only if an employee is discharged *after* a section 202 hearing. (*Burns, supra,* 8 Cal.3d at pp. 731-732.)

This brings us to petitioner's meritorious contention—that where a resignation is induced by fraud, the 90-day period within which to file a demand for reinstatement under section 112½ runs from the date the underlying facts are discovered. In determining when a cause of action accrues in a fraud case (Code Civ. Proc., § 338, subd. 4; e.g., *Security First Nat. Bank* v. *Ross,* 214 Cal.App.2d 424, 429 [29 Cal.Rptr. 538]) and when apparent late claims should be permitted under the California Tort Claims Act (Gov. Code, §§ 901, 911.2 et seq.; *Whitfield* v. *Roth,* 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588] ) the explicit rule is that the applicable period within which to file runs from the date that the facts were or should have been discovered. It seems reasonable that the date-of-discovering rule be found implicit in section 112½.

Indeed, respondents do not suggest any reason to the contrary, other than to point out that there are no California cases on the subject. There is, however, nothing in the cases involving involuntary resignations and/or section 112½ that suggests a result contrary to the one we reach.

[4]Petitioner relies on *Conti* v. *Board of Civil Service Commissioners,* 1 Cal.3d 351, 360 [82 Cal.Rptr. 337, 461 P.2d 617], for language in connection with the defense of laches, that a discharged employee can minimize the prejudice to the employer by waiving back salary and other benefits. The question in *Conti* was simply whether prejudice to the public employer could be presumed from unreasonable delay in filing a petition for writ of mandate within the applicable statute of limitations. (*Id.* at pp. 357- 358 and fn. 3, p. 357.) *Conti* would apply if a former employee had filed a demand within 90 days and the employer nonetheless claimed he was barred by laches.

The decided cases involved coercion (see *Moreno* v. *Cairns, supra,* 20 Cal.2d 531, 534; *Temple* v. *Horrall, supra,* 92 Cal.App.2d 177, 179) and the issue did not arise because, as petitioner points out, the victim of coercion knows he is being coerced: there is nothing to discover.[5]

Moreover, several cases intimate that in an appropriate case the failure to file or the late filing of a demand under section 112½ would be excused. (*Wilson* v. *Department of Public Works,* 153 Cal.App.2d 152, 155 [314 P.2d 84]; *Hicks* v. *City of Los Angeles,* 133 Cal.App.2d 214, 221, 223 [283 P.2d 1046]; *Varela* v. *Board of Commissioners, supra,* 107 Cal.App. 2d 816, 820-821.)

On the scanty record before us, we cannot say whether petitioner's excuse is adequate. However, respondents' mere declaration that petitioner did not file a demand for reinstatement cannot bar his action at this point. We do agree with respondents that petitioner's failure to file a claim for back wages at any time is uncontroverted and unexcused and that petitioner cannot now claim any back salary.

In summary, petitioner's uncontradicted statements that he resigned in reliance on Salvino's false representations, that he learned that the representations were false only after some months had passed, and that a letter demanding reinstatement was filed with the civil service commission within 90 days of his discovery of the true facts are sufficient to prevent his failure to file a demand for reinstatement within 90 days of his ersignation from barring any further judicial action.

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.

---

[5]Respondents point out that whatever the *Moreno* and *Temple* courts may have said about duress, the officers involved in those cases did, in fact, also claim that their resignations were induced by fraud. True, but since neither officer filed any demand under section 112½ at any time, the question when the time for the filing of a demand based on a fraudulently induced resignation would start to run, was not discussed. Moreover, a claimant who charges both fraud and duress knows of facts which make his resignation illegal from the moment he resigns, even if he does not know all there is to know.