Daniel N. BLOMQUIST, Petitioner and Appellant,

v.

James CLAGUE, Chief of Police of the City of Grand Forks, North Dakota, and Mayor C. P. O'Neil, appointing authority, Respondents and Appellees.

Civ. No. 9698.

Supreme Court of North Dakota.

March 13, 1980.

Rehearing Denied March 31, 1980.

Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for petitioner and appellant; argued by Shirley A. Dvorak, Grand Forks.

Letnes, Marshall & Fiedler, Grand Forks, for respondents and appellees; argued by F. John Marshall, Grand Forks.

PAULSON, Justice.

The appellant, Daniel N. Blomquist ["Blomquist"], brought this appeal from a judgment of the Grand Forks County District Court denying his petition for a writ of mandamus. The district court ruled that Blomquist failed to exhaust his administrative remedies in connection with his "dismissal" from the City of Grand Forks Police Department and that, as a result of this failure to seek an administrative remedy, mandamus could not properly be issued. For reasons set forth in the opinion, we find that the trial court abused its discretion in denying the petition for writ of mandamus. We reverse and remand to the district court with instructions that Blomquist be permitted an evidentiary hearing to determine whether his "resignation" was voluntary or involuntary, and, if involuntary, whether or not proper procedures were followed in bringing about his dismissal. On remand, we. order that Honorable Lawrence A. Leclerc, a district judge of the East Central Judicial District, preside as trial judge.

Because of the fact that no evidentiary hearing was held in this matter, the facts of this case are at times confusing, conflicting, and incomplete.

On the evening of March 7, 1978, Blomquist was off duty and traveling in his van with two other off-duty police officers. They were proceeding in a westerly direction on U. S. Highway No. 2 in Grand Forks when they picked up a hitchhiker who indicated a desire to travel in that direction. From conversation with the hitchhiker, Blomquist discovered that the hitchhiker was out on bail for a theft offense. Conversation soon turned to the subject of drugs and Blomquist suspected that the hitchhiker was involved in narcotics trafficking. Blomquist told the hitchhiker that he had 500 pounds of marijuana for sale.

The following morning, March 8, 1978, Blomquist related the information about his conversation of the previous evening with the hitchhiker to a narcotics agent in Grand Forks. Blomquist claims that his intention was to assist the narcotics agent in setting up a "controlled sale" of marijuana. The same morning, however, the hitchhiker had called his attorney and told the attorney about the conversation with the three men in the van on the previous evening. On his attorney's advice, the hitchhiker went to the sheriff's department in Grand Forks and agreed to cooperate in setting up a "controlled buy" from the three individuals who had been in the van. Dale Maixner, a narcotics agent in Grand Forks, informed Blomquist that the hitchhiker was working with the police in an attempt to make a controlled purchase from. the men who had been in the van. No such sale or purchase was ever completed because of the fact that the police were involved with both the seller and buyer in the same proposed transaction.

On March 14, 1978, Blomquist was called into the office of Chief of Police James Clague ["Clague"] and orally reprimanded for his unauthorized activities. The following day, Blomquist was again orally reprimanded for his activities, this time by a Captain Hintz of the Grand Forks Police Department.

On March 16, 1978, Blomquist was again called into Clague's office. Clague informed Blomquist that Blomquist had committed a felony by attempting to deliver a controlled substance. According to Blomquist's account, he was told to resign or else he would be fired and charges would be pressed against him. He asked for an opportunity to call Truman Sorenson of the Teamsters Union, in order to discuss the matter with him. The Teamsters Union represents employees of all the law enforcement agencies in Grand Forks. Clague told Sorenson of the felony charges against Blomquist and Sorenson advised Blomquist to resign. Blomquist then submitted his resignation by letter dated March 16, 1978. The letter was typed by Clague's secretary in his office. Clague accepted Blomquist's "resignation" the same day.

For the next few weeks Blomquist was upset about losing his job and believed that there was nothing he could do about it because he resigned rather than be fired. After some time he discovered that the circumstances surrounding his resignation could be considered a dismissal. On April 12, 1978, he requested a hearing on his "dismissal" before the Grand Forks City Civil Service Commission ["Commission"]. This was 27 days after he had "resigned" in Chief Clague's office.

The matter of Blomquist's request for a hearing came before the Commission for decision on April 27, 1978, but was postponed until June 15, 1978, in order that Blomquist's attorney could appear. On June 15, Blomquist's request for a hearing was denied and Blomquist was notified of this by letter dated June 27, 1978.

Blomquist then brought an application for a writ of mandamus dated July 26, 1978, and filed an affidavit in support thereof dated July 28, 1978. For some reason, the application for a writ of mandamus was never served until April 3, 1979, although it appears that the city attorney of Grand Forks signed an admission of service dated July 27, 1978. Blomquist's account of this matter is that a hearing on the application for the writ of mandamus was scheduled for August 9, 1978, which hearing had to be postponed, however, because City Attorney F. John Marshall suffered a heart attack earlier on that day. In oral argument, Marshall conceded that he had had a heart attack on August 9, 1978, but that he had only missed 21 days of work thereafter. That does not explain a delay of eight months in scheduling anew the hearing on the application for a writ of mandamus.

On December 11, 1978, Blomquist filed a tort action against the city. That tort action is relevant on this appeal only because it added to the confusion already existing in the case. The clerk of Grand Forks County District Court filed both the tort action and the mandamus action in the same file because the captions were similar and because no express instructions as to filing were received from Blomquist's counsel. The commingling in one file of the papers in the two actions caused considerable problems with various motions that were made, especially with demands for change of judge. Finally the presiding judge took control of the matter, consolidated the two cases, and decided that he would hear the cases. The presiding judge's decision to hear these cases was approved by this court, based on representations made to this court in a letter from the presiding judge of the district. That letter did not clarify the fact that, at that time, the two separate actions were filed as though they were one action.

The application for a writ of mandamus was finally heard on August 27, 1979, and was denied by the trial judge without an evidentiary hearing being held.

This court said in *Fargo Ed. Ass'n v. Paulsen*, 239 N.W.2d 842, 849 (N.D.1976), that it will not overturn a trial court's denial of a writ of mandamus unless there is a finding that the court has abused its discretion. Section 32-34-06, N.D.C.C., provides for a jury determination if an essential question of fact is presented in the application for a writ of mandamus and disputed in the answer. Section 32-34-06, N.D.C.C., indicates that disputed questions of fact should be resolved before the court proceeds to rule on the legal issues underly-

ing the application for a writ of mandamus. In the instant case, the trial court found that the termination of Blomquist's employment was a resignation and not a dismissal and that even if it was a dismissal, Blomquist failed to file a timely request for a hearing. On that logic, the trial court based its conclusion that Blomquist was not entitled to mandamus relief because he failed to exhaust his administrative remedies. The trial court, however, based its conclusions on findings of fact made without ever having held an evidentiary hearing. Under the facts of this case, an evidentiary hearing was required and we hold that it was an abuse of discretion not to provide one.[1]

■ The first question which must be answered is whether or not Blomquist's "resignation" was in reality a dismissal. A resignation obtained by threat of criminal prosecution is obtained by duress and, therefore, invalid. *Hassett v. Barnes*, 11 A.D.2d 1089, 206 N.Y.S.2d 606, 607 (1960). According to Blomquist, he was threatened with prosecution for attempting to deliver a controlled substance. Chief Clague did not address this issue in the affidavit which he submitted, but counsel for Clague argues that the evidence of Blomquist's alleged criminal wrongdoing was to be referred to the state's attorney, regardless of whether or not a resignation was obtained. The trial judge should have held an evidentiary hearing to determine whether or not Blomquist's resignation was obtained through threats of criminal prosecution. Such a question is a question of fact and its resolution is required before a decision can be rendered on the issues of law presented in the application for a writ of mandamus.

■ Whether the termination of Blomquist's employment was a resignation or a dismissal depends on whether it was voluntary. Other courts have been faced with the same issue. Those courts have consistently held that a resignation which is invol-

untary is tantamount to a dismissal, discharge, or layoff. See *Reynolds v. City of Los Angeles*, 43 Cal.App.3d 738, 118 Cal. Rptr. 59 (1974) [resignation of police officer obtained by fraud]; *Temple v. Horrall*, 92 Cal.App.2d 177, 206 P.2d 909 (1949) [resignation of police officer obtained by coercion]; *Moreno v. Cairns*, 20 Cal.2d 531, 127 P.2d 914 (1942) [assistant fire chief forced to resign under duress]; *Gobac v. Davis*, 62 N.J.Super. 148, 162 A.2d 140 (1960) [alcoholic beverage control inspector forced to resign under duress]. The California Court, in *Moreno, supra* 127 P.2d at 916, stated:

> "Such [involuntary] resignations are akin to lay offs, suspensions, or discharges by virtue of the element of coercion and bear only a formal resemblance to voluntary resignations. Whenever a person is severed from his employment by coercion the severance is effected not by his own will but by the will of a superior. A person who is forced to resign is thus in the position of one who is discharged, not of one who exercises his own will to surrender his employment voluntarily."

■ Once it has been determined that a resignation is involuntary and, therefore, tantamount to a dismissal, the analysis should next proceed to the issue of whether or not the dismissal is valid. If it is found that the dismissal is invalid, the discharged employee is entitled to reinstatement. If the dismissal is found to be valid, the question then becomes whether or not the discharged employee failed to exhaust administrative remedies. Courts have held that a civil service employee who has involuntarily resigned must exhaust the administrative remedies provided for in cases of dismissal. See e. g., *Moreno, supra;* and *Reynolds, supra.* Counsel for the city contends that Blomquist failed to exhaust his administrative remedies because he failed to comply with § 12(e) of the Grand Forks City Code, which provides as follows:

---

1. Blomquist's counsel requested an evidentiary hearing, but such request was summarily denied by the trial judge, even though Blomquist was prepared to go forward with the evidence and produce witnesses (five witnesses were present in court) at the August 27, 1979, hearing on the application for a writ of mandamus.

"The appointing authority may, for misconduct, inefficiency, or other just cause, dismiss any employee at any time, effective immediately, without pay, with the approval of the city attorney as to legality. The employee being dismissed shall be furnished a written statement of the reasons for the discharge, and a copy shall be filed with the Civil Service Commission.

"An employee wishing to appeal a notice of dismissal must file a written request for a hearing with the Civil Service Commission within fifteen (15) calendar days of the effective date of the dismissal. After receiving the written notice of appeal the Commission shall hold a hearing within thirty (30) calendar days. If the Commission determines that the dismissal is not warranted, the employee shall be reinstated to his former position with full restitution of salary, seniority status and all other benefits."

It is undisputed that Blomquist did not request a hearing within fifteen days of his resignation. The resignation was tendered on March 16, 1978, and accepted the same day. His request for a hearing was made twenty-seven days later; on April 12, 1978. It is for this reason that the trial court concluded that Blomquist failed to exhaust his administrative remedies. We disagree.

■ If it is determined upon remand that the action of the city was not in compliance with the provisions of § 12(e) of the Grand Forks City Code, then the dismissal would also be invalid. There are several reasons for this. Before the city can invoke the fifteen-day limitation of § 12(e), the appointing authority, defined in § 2(7) of the Grand Forks City Code as the mayor of Grand Forks, must discharge Blomquist and the reasons therefor must be furnished to him in writing. The city cannot use the subterfuge of a forced resignation as a means of circumventing its own procedures for dismissal—procedures which have been designed to protect employees in civil service positions from the very type of tactics used here.

■ It has been argued by counsel for the city that the mayor and the city attorney were informed of Blomquist's action and that they advised Chief Clague to obtain Blomquist's resignation. Once again, the lack of an evidentiary hearing in this case clouds the truth-ascertaining process. As part of its fact-finding process, the trial court should have allowed evidence to be presented by both sides which would have indicated the extent of the control the mayor of Grand Forks exercised in bringing about Blomquist's dismissal. The trial court should then have determined whether or not the Grand Forks City Code would allow the mayor to delegate his authority to discharge a police officer; whether or not that authority can be delegated to the chief of police; and, if so, whether or not there was a valid delegation of that authority in this case.

Under the facts of this case, Blomquist had no forum in which to vent his grievances. He was entitled to an evidentiary hearing on the questions raised by his application for a writ of mandamus. In the recent case of *Fargo Ed. Ass'n v. Paulsen*, 239 N.W.2d 842, 844 (N.D.1976), this court said:

"This court has held that the prerequisites to the issuance of a writ of mandamus are that the petitioner must show that he has no plain, speedy, and adequate remedy in the ordinary course of the law and that he has a clear legal right to the performance of the particular act sought to be compelled by the writ."

At the very least, the district court should have allowed Blomquist to present evidence which showed that he had no other remedy and that he had a clear legal right to reinstatement to his position with the Grand Forks Police Department. Those points were raised in his affidavit in support of the writ but he was never allowed to present evidence to support the contentions in his affidavit.

■ Finally, Blomquist requests that on remand the Supreme Court should appoint a judge outside the City of Grand Forks. In *United Hospital v. Hagen*, 285 N.W.2d 586, 589 (N.D.1979), this court held that

"when there is an allegation of prejudice presented to this court, we favor granting the change of judge" in a situation where the judge would be presiding at the trial on the merits. We believe that, under the facts and circumstances of this particular case, Judge A. C. Bakken should be removed and Judge Lawrence A. Leclerc should preside at the evidentiary hearing on remand. This is in the best interests of the integrity and fairness of the judicial process and does not indicate that we find any substance to the allegations of prejudice against Judge Bakken or of bias in favor of the Grand Forks Police Department.

The judgment is reversed and remanded for proceedings consistent with this opinion and a change of judge is ordered upon remand.

ERICKSTAD, C. J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring and dissenting.

Although I concur in much of the statement of law in the majority opinion, to authorize an evidentiary hearing into the merits of this case has to qualify for Ripley's "Believe it or Not." I don't believe that, on its face, there is an adequate application now pending. Judge Leclerc, have fun. I don't want to spoil it for you by itemizing all of the incredible things I find in the record certified to us by the Clerk of the District Court of Grand Forks County, but I do want to comment on a few of the choicest.

(1) You might wonder if there is one action or two; whether Blomquist or Bloomquist is the plaintiff; whether James Clague (individual) and the City of Grand Forks or James Clague (Chief of Police) and C. P. O'Neil (Mayor) are the defendants; and whether service has ever been made in either case as required by Rules 4 and 5, NDRCivP. You will discover, as I did, that after a docket number "31755" was assigned by the clerk of court to the $50,000 damage suit against James Clague and the City, that Blomquist's attorney's secretary typed the same file number, "Civil No.

31755", on the Notice of Application for a Writ of Mandamus and on the Affidavit of Service by Mail. This is a separate action which should have had a separate file, yet Blomquist now infers that some errors by the clerk and the district court caused all of this mess. You will have to ignore the dates on many documents.

(2) You may be concerned whether the mandamus proceedings were intended to be a "more definite statement" of the complaint that was being sought by Attorney Marshall, or if Blomquist meant the damage-action complaint to show that he did not have a plain, speedy, and adequate remedy in the ordinary course of law. Section 32–34–02, NDCC.

(3) You will be confused by Judge Bakken's proceeding to hear, on March 12, 1979, a motion for more definite statement after acknowledging, on March 9, 1979, that he had received a copy of Blomquist's demand for change of judge.

(4) You will be amazed that Blomquist assumes that you can, by this writ of mandamus, reinstate him as a patrolman on the Grand Forks Police Department. He doesn't ask for anything else that he might be entitled to.

(5) Finally, you may even find it amusing that a trained police officer would come up with a fantastic new drug enforcement tool called "a controlled sale," and that a narcotics agent would tip off the target, even if the target is a police officer, in a planned, controlled purchase. On the other hand, it should not strike you as amusing that Blomquist's affidavit in support of application for writ of mandamus says that he was afforded the option of resigning "or being fired," but when his attorneys, having found authorities critical of resignations under threat of criminal prosecution, now argue that Blomquist resigned under a threat of a felony charge.

A couple of interesting cases to read that involve special proceedings and related problems are *Hazelton-Moffit Special School Dist. No. 6 v. Ward*, 107 N.W.2d 636 (N.D.1961), and *Holcomb v. Hamm*, 77 N.D. 154, 42 N.W.2d 70, 52 A.L.R.2d 471 (1950).