**Gary LEE, Plaintiff and Appellant,**

v.

**Percy WALSTAD, Mayor of Park River, and City of Park River, a municipality, Defendants and Appellees.**

**Civ. No. 10887.**

Supreme Court of North Dakota.

May 22, 1985.

political activity inappropriate to the judicial office.

Shirley A. Dvorak of Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for plaintiff and appellant.

M. Richard Geiger of Dahl, Greenagle, Currie, Geiger & Petersen, Grafton, for defendants and appellees.

VANDE WALLE, Justice.

Gary Lee appealed from a summary judgment dismissing his action against Percy Walstad, Mayor of Park River, and the City of Park River. We affirm.

Lee was employed as the Chief of Police for Park River. He was discharged from his position by the Mayor during the week of July 4, 1984, the week Park River was to celebrate its centennial. The justification for the discharge is in dispute. Lee subsequently brought an action seeking a writ of mandamus requiring that he be reinstated to his position as Chief of Police. An alternative writ of mandamus was issued requiring the Mayor and the City to reinstate Lee to his position or show cause before the court why they had not done so. Prior to the hearing on the order to show cause, Walstad and the City filed a "Motion for Dismissal and Summary Judgment" in which they alleged as grounds for the motion for dismissal that reinstatement is a discretionary and not a ministerial act and that Lee had a plain, speedy, and adequate remedy in the ordinary course of the law, i.e., "a complaint for wrongful discharge, which plaintiff has commenced." The motion for summary judgment of the complaint for wrongful discharge was made "on the basis that the complaint fails to state a cause of action for which relief may be granted." Subsequent to the filing of briefs by the parties, the court issued its memorandum opinion and order for summary judgment, observing that under Section 40–08–19, N.D.C.C., there is a two-part inquiry: (1) Did Mayor Walstad remove Gary Lee because he was of the opinion that the interests of the City demanded it, and (2) Did he report the reasons to the city council at its next regular meeting? The trial court concluded that according to the affidavits of the Mayor and a member of the city council submitted in support of the motion for summary judgment the answer to both questions was yes and ordered the alternative writ of mandamus vacated and summary judgment entered for the defendants.

On appeal Lee presents two issues: (1) Was it an error of law to grant summary judgment based upon affidavits rather than the public record as required by statute, and (2) Was it a reversible error of law for the trial court to disregard statutory requirements as a limitation to the "at will" doctrine?

We begin our discussion of the issues with Section 40–08–19, N.D.C.C., the statute under which Lee was removed from office, and of the procedures which he claims were not followed. Section 40–08–19 provides:

"*Mayor may remove appointive officers—Reasons for removal to be given.* The mayor may remove any officer appointed by him whenever he is of the opinion that the interests of the city demand such removal, but he shall report the reasons for such removal to the council at its next regular meeting."

The chief of police is an officer appointed by the mayor in council cities. See Section 40–08–27, N.D.C.C.

Lee argues that the requirements of Section 40–08–19, N.D.C.C., were not followed in that the record does not reveal the mayor reported the reasons for his removal to the council at its next regular meeting. The Mayor and one of the members of the city council filed affidavits stating that the Mayor did report the reasons for the removal at the next meeting of the city council. Lee urges that it was error for the trial court to rely upon those affidavits when the minutes of the city council do not reflect that the Mayor made such a report and that if a question of fact exists as to whether or not the report was made, summary judgment is not proper. Rule 56, N.D.R.Civ.P.

We believe the trial court was correct in its determination. The record before us

contains the affidavits of the Mayor and a council member stating without qualification that the Mayor did report to the council his reasons for discharging Lee. There is no affidavit to the contrary, but in his brief Lee alleges that the minutes of the meeting of July 9, 1984, following his dismissal, are devoid of any report by the Mayor or any reasons for the removal. Those minutes are not in the record before us and we must assume they were not before the trial court. However, for purposes of discussion if we assume that the minutes do not reflect any report by the Mayor as required by statute, the absence of reference thereto in the minutes of the council is not conclusive of the issue. It is possible that a report was made by the Mayor as required by statute but that the report and reasons contained therein were not made part of the minutes.

Although we agree with Lee that where the law requires a public record of proceedings to be kept, such records cannot be contradicted, added to, or supplemented by parol evidence [see McQuillin, *Mun Corp* § 14.07 (3rd Ed)], we are not convinced that the statute required the minutes to reflect the report by the Mayor. Section 40–08–19 does not appear to contemplate any action by the city council following the report by the Mayor. The better practice might well have been to spread upon the minutes of the city council the reasons advanced by the Mayor for removing Lee from his position as Chief of Police, but the statutes appear to require the minutes to reflect the *action* taken by the council. Thus Section 40–11–03, N.D.C.C., requires that the "yeas and nays shall be taken and entered on the journal of the governing body's proceedings upon the passage of all ordinances and upon all propositions creating any liability against the city or providing for the expenditure or appropriation of money, and in all other cases at the request of any member." See *Mitchell v. City of Parshall*, 108 N.W.2d 12 (N.D. 1961). Here, the council is not required to affirm the action taken by the Mayor. If the council were to take action it would be action not required by the statute.

Finally, as we discuss more fully in the next issue, we do not believe the statute requiring the Mayor to report his reasons for removal to the city council was enacted for the benefit of the officer removed; rather, we conclude the statutory provision is for the benefit of the city council so that the members thereof might be apprised of the events occurring in city government. In this case, Lee has not requested a writ of mandamus seeking to have the Mayor report his reasons for removing Lee to the city council and to have those reasons published as part of the proceedings of the city council [see Section 40–18–12, N.D.C.C.]; rather he is seeking to be reinstated to his position as Chief of Police because of the alleged failure of the Mayor to make the report required by statute. Assuming Lee is correct in his contention that he has the right to have the Mayor make the report as provided by statute, that right does not extend to entitlement to reinstatement to his position as Chief of Police. A writ of mandamus will not lie against a municipal board or officer unless the plaintiff's legal right to the performance of the particular act sought to be compelled by the writ is clear and complete, and we will reverse the trial court's denial of a writ of mandamus only if, as a matter of law, such writ should issue or there is a finding that the trial court has abused its discretion. See, e.g., *Mini Mart, Inc. v. City of Minot*, 347 N.W.2d 131 (N.D.1984).

Under these circumstances any factual issue as to whether or not the Mayor reported his reasons for removing Lee from his position would not be material insofar as Lee's requested relief is concerned, and would not foreclose summary judgment under Rule 56, N.D.R.Civ.P.

Lee's second contention is that North Dakota law requires a minimum of proper notice, which he did not receive, before he may be discharged. In support of his position, Lee refers us to our decision in *Blomquist v. Clague*, 290 N.W.2d 235 (N.D. 1980), wherein this court held that a Grand Forks police officer was entitled to an evi-

dentiary hearing to determine whether or not his resignation was involuntary and, if the resignation was involuntary, whether or not the proper procedures had been followed in discharging him from his position. That decision is inapposite, because it is based upon the ordinances of the City of Grand Forks which, as we noted in the opinion, were "designed to protect employees in civil service positions from the very type of tactics used here." 290 N.W.2d at 239. Nowhere in *Blomquist* do we rely upon the statutes of this State as providing to the police officer any rights to notice or hearings. Here, contrary to *Blomquist*, it is uncontroverted that the city ordinances provide no procedures for the protection of city employees such as Lee.

■ The distinction between those positions in which the employee is given some protection and those "at will" positions are significant because in a recent decision, *Cleveland Board of Education v. Loudermill*, — U.S. —, 105 S.Ct. 1487, 84 L.Ed.3d 494 (1985), a majority of the United States Supreme Court held that where a statute plainly supports the conclusion that an employee possesses a property right in continued employment, the Due Process Clause of the Fourteenth Amendment to the United States . Constitution requires that before the employee may be denied that property right he must have notice and an opportunity to respond prior to a determination as to whether there are reasonable grounds to believe that the charges against the employee are true. Justice White, writing for the Court, noted that the right to due process is conferred not by the statute which grants the property interest in employment but rather by the Constitution. Thus, if Lee has a property interest in his employment, he would be entitled to notice of the reasons for his discharge and an opportunity to respond before he could be deprived of that property interest. The requirement of the statute that the Mayor report the reasons for removal to the city council would not comport with due-process requirements.

*Cleveland Board of Education v. Loudermill, supra,* is significant to our decision today for yet another reason, however. The Court, noting that property interests are not created by the Constitution but rather are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as State law, quoted with approval a statement from *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15, 40–41 (1974), that "[w]hile the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." —— U.S. at ——, 105 S.Ct. at 1493, 84 L.Ed.3d at 503. In the three cases involved in *Loudermill* there was little dispute in the lower court that the employees had a property interest in their employment pursuant to a statute which made the employees classified civil service employees who could not be dismissed except for "incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any acts of misfeasance, malfeasance, or nonfeasance in office." See § 124.34, Ohio Rev.Code Ann.

■ Here, contrary to *Loudermill*, we can discern no intent to confer a property interest in employment as chief of police by the enactment of Section 40–08–19, N.D. C.C. A comparison of this provision, which Lee alleges creates a property interest because of the requirement that the Mayor must report his reasons for removal to the city council, with the provisions of the Ohio statute in *Loudermill* quickly reveals the infirmity of Lee's contention.

Finally, Lee urges that we modify the "at will" termination-of-employment provisions which are part of Section 40–08–19 and more broadly permitted by Section 34–03–01, N.D.C.C. In support of that position Lee refers us to *Brockmeyer v. Dun*

*& Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983), in which a majority of the Wisconsin Supreme Court determined to recognize a limited public-policy exception. In adopting that exception the court noted that the employee alleging a wrongful discharge has the burden of proving that the dismissal violates a clear mandate of public policy and that unless the employee can identify a specific declaration of public policy, no cause of action has been stated. The court, in defining the contours of the public-policy exception, noted that a "wrongful discharge is actionable when the termination clearly contravenes the public welfare and gravely violates paramount requirements of public interest. The public policy must be evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute. Employers will be held liable for those terminations that effectuate an unlawful end." 113 Wis.2d at 573, 335 N.W.2d at 840.

Lee has defined no clear public policy which his removal violates. Thus, were we inclined to adopt a public-policy exception to the terminable "at will" rule in an appropriate case, we do not do so in this case. See *Wadeson v. American Family Mut. Ins. Co.,* 343 N.W.2d 367 (N.D.1984), in which we were urged to adopt an "independent consideration" exception to the terminable "at will" rule.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.